UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs

LARRY CHARLES INMAN,

    Defendant.

Case No. 1:19-cr-117
Hon. Robert J. Jonker
Hon. Phillip J. Green

_____/

| | |
|---|---|
| Christopher M. O'Connor (P71846)<br>Assistant United States Attorney<br>330 Ionia Ave NW<br>Grand Rapids, MI 49503-2504<br>(616) 456-2404<br>*Christopher.oconnor@usdoj.gov* | Christopher K. Cooke (P35034)<br>NEUMANN LAW GROUP<br>Attorney for the Defendant<br>300 East Front Street, Suite 445<br>Traverse City, MI 49684<br>(231) 221-0050<br>*chris@neumannlawgroup.com* |
| Ronald M. Stella (P45316)<br>Assistant United States Attorney<br>330 Ionia Ave NW<br>Grand Rapids, MI 49503-2504<br>(616) 456-2404<br>*Ron.stella@usdoj.gov* | |

_____/

**DEFENDANT LARRY CHARLES INMAN'S MOTION TO DISMISS PURSUANT TO USCS FED RULES CRIM PROC R 12(b)(2), (b)(3)(A)(v),(b)(3)(B)(iii) AND (v) AND/OR FOR A BILL OF PARTICULARS PURSUANT TO RULE 7(f)**

**DEFENDANT LARRY CHARLES INMAN'S MOTION TO IDENTIFY EVIDENCE THE GOVERNMENT INTENDS TO INTRODUCE TO THE JURY PURSUANT TO USCS FED RULES CRIM PROC R 12(4)(B)**

NOW COMES THE DEFENDANT LARRY CHARLES INMAN, by and through his attorneys

of record NEUMANN LAW GROUP and for his motion to dismiss pursuant to USCS Fed Rules

Crim Proc R 12(b)(2), (b)(3)(A)(v),(b)(3)(B) and (v) and/or for a Bill of Particulars and for an

order requiring the Government to identify evidence it intends to introduce before the jury pursuant to Fed Rules Crim Proc R 12(4)(B) states as follows:

1. Defendant Inman is charged in a three count indictment with Attempted Extortion Under Color of Official Right (Count 1) in violation of U.S.C. sec 1951 (the Hobbs Act), Solicitation of a Bribe (Count 2) in violation of 18 U.S.C. sec 666(a)(1)(B) and False Statement to the FBI (Count 3) in violation of 18 U.S.C. sec 1001(a)(2) regarding a vote by the Michigan House of Representatives on a referendum intended to repeal Michigan's "Prevailing Wage Law."

2. The Hobbs Act prohibits "Interference with Commerce by Threats or Violence" and states:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years or both.

3. "Extortion" is defined as:

> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right.

4. To support this charge the indictment sets forth four text messages obtained from Mr. Inman's cellular phone sent to unidentified Union representatives from the Michigan Regional Council of Carpenters and Millwrights ("MRCCM") on June 3 and 4, 2018, several days before the June 6, 2018 vote which approved the repeal (Indictment at paragraphs 6 through 9).

5. The indictment, in paragraph 4, states that the MRCCM made "political contributions to the Defendant's candidate committee totaling $6,000" between the dates of "October 17 and May 16, 2018". Apparently the last said donation occurred several weeks before the first subject text message and prior to the initiative petition being certified by the Board of State Canvassers.

6. In paragraph 4 the indictment states that : "On or about June 1, 2018, the Michigan Board of State Canvassers certified the prevailing wage initiative petition and delivered it to the Michigan legislature."

7. An initiative petition is an attempt by the citizenry or the state to make new law or repeal existing law. The petition must be signed by, at least, 8 percent of the total electorate who cast ballots for candidates for Governor in the last gubernatorial election. The initiative petition must be filed with the Secretary of State and Board of State Canvassers who then check the validity and sufficiency of the signatures on the petition. Once certified, the initiative is sent to both houses of the Legislature which then has 40 days to enact (a majority vote of both houses of "Yes") or to reject the initiative (a majority vote of either the state House or state Senate of "No"). If the initiative petition is not approved by the legislature, it is placed on the general ballot for the next statewide election (Michigan Election Law 1954 PA 116, Article 2, Sec 9, Michigan Const of 1963, as amended, MCL 168.476, 477, ).

8. In short, a "No" vote on the referendum would have been a vote in favor of not passing the initiative into law by the legislature. If the "No" votes had prevailed in the state House of Representatives of which Defendant was a member the initiative petition would have been placed on the November 2018 ballot to be voted on by the general electorate of the state.

9. In a light most favorable to the government, therefore, if Defendant was attempting to assist the MRCCM (union) in getting the measure on the general ballot, his vote, in no way would have affected commerce. It would have simply sent the measure to the general ballot for determination by the people of the State of Michigan instead of by operation of the legislature.

10. In paragraph 10 the indictment alleges, "MRCCM provided no additional campaign contributions to the Defendant's candidate committee after receiving Defendant's text message on June 3, 2018." Although this is true on its face, the last alleged donation by the MRCCM to defendant's candidate committee occurred on May 16, 2018 (per paragraph 4 of the indictment) prior to any certification of the initiative by the Board of State Canvassers.

11. Per Michigan statute, a Political Action Committee (PAC) may legally donate up to $10,000 to a legislator's campaign committee (MCL 169.252).

12. It is not a violation of the Hobbs Act for a legislator, who has received contributions or other benefits from a PAC to support legislation favorable to the PAC. "Campaign contributions will not be authorized as the subject of a Hobbs Act prosecution unless they can be proven to have been given in return for the performance of or abstracting from an official act, otherwise any campaign contribution might constitute a violation." *McCormick v. United States, 500 U.S. 257 (1991)*.

13. Representative Inman voted "Yes" on the referendum which was approved by a 56 to 53 vote (paragraph 11). The defendant's "Yes" vote was contrary to the position of the MRCCM. The vote of the House caused the initiative petition to become law and the "Prevailing Wage Law" to be repealed. Thereafter, it is apparent that the Union turned in the defendant's text messages to law enforcement.

14. Representative Inman's "Yes" vote on the House floor cannot be subject to civil or criminal prosecution under the Speech or Debate Clause, Art. 1 sec. 6 of the United States Constitution, *United States v. Brewster, 408 U.S. 501 (1972)* (found to apply to state legislators, Article IV, Section 11 of the Michigan Constitution, *United States v. Nelson, 486 Supp 464 (USDC, MIWD 1980))*. Defendant's vote holds both substantive immunity and an evidentiary privilege. Defendant has absolute immunity as to his vote and it cannot be used as evidence in a prosecution, *Nelson, supra.*

15. The contributions made to Mr. Inman's campaign from October 17 to May 16, 2018, before it was even known that the initiative petition would be certified for consideration by the House cannot be used to support a Hobbs Act violation as they are unconnected in time or by any other allegation in the indictment. They are pure campaign contributions that cannot be used to support an indictment.

16. Mr. Inman's "Yes" vote is immune and cannot be used to suggest or infer that he did not receive campaign contributions from MRCCM after "June 3, 2018" (in actuality May 16, 2018 per the indictment) and thus elected to vote against the Union's interest.

17. To the extent that either one or both of these arguments were used in front of the grand jury, Defendant's constitutional rights have been violated, the grand jury was prejudiced by inadmissible evidence and argument and the indictment is legally defective. Fed Rules Crim Proc R 12(b)(A)(v).

18. Solicitation of a Bribe (Count 2) in violation of 18 U.S.C. sec 666(a)(1)(B) requires the government to prove:

   a. the defendant was an agent of an organization, government or agency;

    b. in a one-year period that organization, government or agency received federal benefits in excess of $10,000;

    c. defendant stole, embezzled, obtained by fraud, knowingly converted, or intentionally misapplied property;

    d. that was owned by, or in the care, custody or control of the organization, government or entity; and,

    e. the value of that property was at least $5,000. *United States v. Baroni, 909 F. 3d 550 (2018), United States v. Abbey, 452 F. Supp 2d 766 (2006).*

19. Mr. Inman, per the indictment, is an elected representative of the Michigan House of Representatives

20. The indictment does not allege, nor can it, that the Michigan House of Representatives received federal monies in excess of $10,000 during the one year period before or after the alleged offense.

21. Per the State of Michigan Fiscal Year 2018-19 and 2017-18 Fiscal Years the Michigan Legislature received no federal funds (Exhibit 1, public record documents, "Appropriations Summary and Analysis").

22. In paragraph 17 of the indictment, the government alleges that Mr. Inman "corruptly solicited and demand a thing of value, namely a political campaign contribution of money from MRCCM, intending to be influenced or rewarded…involving a thing of value of value of $5,000 or more, *namely, his vote…*"

23. The indictment is defective as any monies received by defendant from MRCCM, which the government alleges to be $6,000 (in reality defendant only received $2,000, Exhibit 2), was

received long before the initiative petition was certified for a vote of the legislature on June 1, 2018 (Indictment, para 5).

24. Even if the text messages identified in paragraphs 6 and 7 (which are the only ones to mention checks and the prevailing wage vote in the same message) are construed in a light most favorable to the prosecution to be *corruptly* soliciting campaign contributions for defendant and 12 unnamed others, they do not relate to property that was "owned by, or in the care, custody or control of the organization, government or entity" that received "federal monies in excess of $10,000." The Michigan House of Representatives receives no federal monies in its budget and Mr. Inman's vote belongs to him, not to the governmental entity. The United States does not have jurisdiction to prosecute under 18 U.S.C. sec 666(a)(1)(B).

25. Defendant is charged with lying to the FBI under 18 U.S.C. sec. 1001(a)(2) which states:

> **a)** Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--...
>
> **(2)** makes any materially false, fictitious, or fraudulent statement or representation...

To be responsible for a violation under this section, the government must establish that the FBI was within its jurisdiction at the time of the alleged statement. If the government lacks jurisdiction to enforce Count I and Count II, then the matter is not within the jurisdiction of an executive branch of the Government.

WHEREFORE, as to the offense alleged in Count I, there was no affect on commerce by defendant's alleged actions. As to Count II, the Michigan House of Representatives does not receive Federal monies in excess of $10,000 in the relevant one year period prior to the offense and does not fall under the jurisdiction of the federal statute. Mr. Inman's vote was not "owned

by or in the care, custody or control" of the governmental entity. If there is no federal jurisdiction as to Count I and II, defendant cannot be found responsible under Count III.

WHEREFORE, Defendant respectfully requests this Court to dismiss the indictment in full. Alternatively, as it appears from the indictment that campaign contributions allegedly received by Defendant's Campaign Committee were received prior to the certification of the referendum, which was required before it would ever come to a vote, the mention of these contributions in the indictment was a violation of Defendants legitimate right to receive campaign contributions and a violation of the cautionary use of a Hobbs Act prosecution. Further, the inclusion of Defendant's "yes" vote in the indictment is a violation of his immunities under the Speech and Debate Clause. These arguments impermissibly tainted the Grand Jury and the indictment must be dismissed. Finally, the Court, if it does not dismiss the indictment, it is requested that the Court order a full transcription of the Grand Jury proceedings be produced to Defendant so the intent and effect of these improper arguments to the Grand Jury may be analyzed.

June 18, 2019

Respectfully,

Christopher K. Cooke  (P35034)
Neumann Law Group