UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs

LARRY CHARLES INMAN,

        Defendant.

Case No. 1:19-cr-117
Hon. Robert J. Jonker
Hon. Phillip J. Green

_____/

Christopher M. O'Connor (P71846)
Assistant United States Attorney
330 Ionia Ave NW
Grand Rapids, MI 49503-2504
(616) 456-2404
*Christopher.oconnor@usdoj.gov*

Christopher K. Cooke (P35034)
NEUMANN LAW GROUP
Attorney for the Defendant
300 East Front Street, Suite 445
Traverse City, MI 49684
(231) 221-0050
*chris@neumannlawgroup.com*

Ronald M. Stella (P45316)
Assistant United States Attorney
330 Ionia Ave NW
Grand Rapids, MI 49503-2504
(616) 456-2404
*Ron.stella@usdoj.gov*

_____/

**DEFENDANT LARRY CHARLES INMAN'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO USCS FED RULES CRIM PROC R 12(b)(2), (b)(3)(A)(v),(b)(3)(B)(iii) AND (v) AND/OR FOR A BILL OF PARTICULARS PURSUANT TO RULE 7(f)**

**DEFENDANT LARRY CHARLES INMAN'S BRIEF IN SUPPORT OF MOTION TO IDENTIFY EVIDENCE THE GOVERNMENT INTENDS TO INTRODUCE TO THE JURY PURSUANT TO USCS FED RULES CRIM PROC R 12(4)(B)**

NOW COMES THE DEFENDANT LARRY CHARLES INMAN, by and through his attorneys

of record NEUMANN LAW GROUP and for his brief in support of motion to dismiss pursuant

to USCS Fed Rules Crim Proc R 12(b)(2), (b)(3)(A)(v),(b)(3)(B)(iii) and (v) and/or for a Bill of

Particulars and for an order requiring the Government to identify evidence it intends to introduce before the jury pursuant to Fed Rules Crim Proc R 12(4)(B) submits the following.

**The Indictment**

Defendant Inman is charged in a three count indictment. Count 1 is Attempted Extortion Under Color of Official Right in violation of U.S.C. sec 1951 (the Hobbs Act). Count 2 is Solicitation of a Bribe in violation of 18 U.S.C. sec 666(a)(1)(B). Count 3 is False Statement to the FBI in violation of 18 U.S.C. sec 1001(a)(2). All charges arise from incidents surrounding a vote by the Michigan House of Representatives on an initiative petition intended to repeal Michigan's "Prevailing Wage Law."

The Indictment recites two text messages sent from Mr. Inman's cell phone to a representative of the Michigan Regional Council of Carpenters and Millwrights ("MRCCM") on June 3 and 4, 2018, several days before the June 6, 2018 vote which approved the repeal. The allegation is that these text messages were sent in an attempt by Defendant Inman to obtain campaign donations in exchange for his favorable vote on the initiative petition (a "No" majority vote of either the Michigan House or Senate was the desired result for MRCCM).

**The Initiative Petition**

An initiative petition is an attempt by the citizenry or the state to make new law or repeal existing law. The petition must be signed by, at least, 8 percent of the total electorate who cast ballots for candidates for Governor in the last gubernatorial election. The initiative petition must be filed with the Secretary of State and Board of State Canvassers who then check the validity and sufficiency of the signatures on the petition. Once certified, the initiative is sent to both houses of the Legislature which then has 40 days to enact (a majority vote of both houses of "Yes") or to reject the initiative (a majority vote of either the state House or state Senate of

"No"). If the initiative petition is not approved by the legislature, it is placed on the general ballot for the next statewide election (Michigan Election Law 1954 PA 116, Article 2, Sec 9, Michigan Const of 1963, as amended, MCL 168.476, 477, ). In short, a "No" vote on the initiative petition would have been a vote in favor of not passing the initiative into law by the legislature. If the "No" votes had prevailed in the state House of Representatives of which Defendant was a member, the initiative petition would have been placed on the November 2018 ballot to be voted on by the general electorate of the state.

In a light most favorable to the government, therefore, if Defendant was attempting to assist the MRCCM (union) in getting the measure on the general ballot, his vote, in no way would have affected commerce. It would have simply sent the measure to the general ballot for determination by the people of the State of Michigan instead of by operation of the legislature.

## I. Jurisdictional Requirements

All three charges have specific jurisdictional requirements.

### a. The Hobbs Act

The Hobbs Act prohibits "Interference with Commerce by Threats or Violence" and states:

(a) Whoever in any way or degree obstructs, delays, or *affects commerce* or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years or both.

"Extortion" is defined in the act as:

(2) The term "extortion" means the obtaining of property from another, with his

consent, induced by wrongful use of actual or threatened force, violence or fear, or

under color of official right.

A violation of the Hobbs Act requires a defendant "to affect commerce" by "robbery or

extortion". The claimed affect on commerce was the alleged offer, made via text message, by

Representative Inman to a MRCCM official to vote "No" on the initiative repealing the

Prevailing Wage Law and thus send it to the general ballot in the state election in November.

The indictment does not allege any effect on commerce through this action by the Defendant.

The Supreme Court has held that legislation enacted based on the Commerce Clause of

the U.S. Constitution must be tied to some affect on commerce. In *United States v. Morrison,*

*529 U.S. 598 (2000),* the Supreme Court struck down 42 USCS 1398, which was enacted by

Congress to provide civil remedies to victims of gender-motivated bias, ruling that Congress

exceeded its authority under the Federal Constitution's commerce clause (Art I, 8 cl 3) as gender

based crimes of violence were not economic activity and that such crimes did not have a

substantial impact on interstate commerce. The Court stated:

> As we observed in *Lopez,* modern Commerce Clause jurisprudence has "identified three
> broad categories of activity that Congress may regulate under its commerce power". 514
> *U.S. at 558 (cites omitted).*"First, Congress may regulate the use of the channels of
> interstate commerce." (cites omitted) "Second, Congress is empowered to regulate and
> protect the instrumentalities of interstate commerce, or persons or things in interstate
> commerce, even though the threat may come only from intrastate activities." (cites
> omitted). "Finally, Congress' commerce authority includes the power to regulate those
> activities having a substantial relation to interstate commerce, . . . *i.e.,* those activities that
> *substantially affect* interstate commerce." *514 U.S. at 558-559, citing Jones & Laughlin*
> *Steel, supra, at 37.*

The Court stated, "[t]he Constitution requires a distinction between what is truly national and

what is truly local, and there is no better example of the police power, which the Founders

undeniably left reposed in the states and denied the central government, than the suppression of

violent crime and vindication of its victims. Congress therefore may not regulate noneconomic, violent criminal conduct based solely on the conduct's aggregate effect on interstate commerce." The Court also noted the long standing rule from *Marbury v. Madison, 5 U.S. 137(1803),* "[t]he powers of the legislature are defined and limited; and those limits may not be mistaken or forgotten, the constitution is written." With that back drop the Court noted that even under the expanded modern era precedents, the Commerce Clause has its limitation:

> "...In *Jones v. Laughlin Steel,* the Court warned that the scope of the interstate commerce power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government.

The Court held, therefore, that the affect of the activity on commerce must be "substantial" for it to fall into the regulatory ambit of the Federal government.

The Hobbs Act was drafted, specifically, with the intention that the prohibited conduct be one that affects commerce as it was intended to empower the federal government to combat organized crime. The Act is entitled :"Interference with Commerce by Threats or Violence." It requires in the body of the Act that the prohibited conduct "obstructs, delays or affects commerce." Specifically, the Hobbs Act was enacted to deal with the very real problem of the "levy of blackmail on industry" committed by "professional gangsters." *United States v. Harding, 563 F. 2d 299 (6th Cir. 1977).* Although the scope of authority of the Hobbs Act has been expanded, it still requires proof of a minimal effect on commerce or a *realistic probability* of an affect on commerce, *United States v. Nelson, 486 F. Supp. 464 (1980).*

Defendant's "No" vote on the initiative petition, which is the alleged act that was offered for a price, has no realistic probability to affect commerce. A "No" vote, had it been in the majority of either the House or Senate, would have sent the ballot initiative to a vote of the general electorate. The voting citizens of Michigan would then have been the deciding votes on the question of repealing the Prevailing Wage law. The fact that the initiative *may* have been sent to a vote of the citizens of Michigan if a "No" vote by the defendant been in the majority in no way implicates an impact on interstate commerce. How would a vote at a general election, entirely by the citizens of the state of Michigan, on a Michigan initiative have any effect, even remotely, on interstate commerce? A "No" vote by the defendant, in any event, would not have affected the approval of the initiative by the House which passed the initiative by a 56 to 53 vote (Indictment, para.11). A potential "No" vote by Representative Inman on the initiative had no *de minimus* impact on commerce nor did it have a realistic probability to affect interstate commerce. Count I must be dismissed.

**b. Bribery**

Defendant Inman is charged with Solicitation of a Bribe (Count 2) in violation of 18 U.S.C. sec 666(a)(1)(B). To establish this offense the government must prove:

      a. the defendant was an agent of an organization, government or agency;

      b. in a one-year period that organization, government or agency received federal benefits in excess of $10,000;

      c. defendant corruptly solicited or demanded for the benefit of any person, or accepted or agreed to accept, anything of value from a person;

      d. intending to be influenced or rewarded;

e. in connection with any business, transaction, or series of transactions of such organization, government, or agency;

f. the value of that property was at least $5,000. *United States v. Abbey, 452 F. Supp 2d 766 (2006)*.

The Indictment does not allege that the Michigan House of Representatives qualifies as an "organization, government or agency" that " received federal benefits in excess of $10,000" in the one-year period of time pre-dating or post-dating the charged offence. The reason why it is unstated in the indictment and, presumptively, not established before the Grand Jury is that the Michigan House of Representatives *receives no Federal funds*. The State of Michigan Appropriations Summary and Analysis, a public record, for the relevant one year period pre-dating and the relevant one year period post-dating the June 2018 vote reflects that the Michigan House of Representatives received *zero* Federal dollars (Exhibit 1, Appropriations Summary and Analysis 2017-2018, p. 57, 2018-2019, p. 51).

The indictment is artfully phrased to say defendant "being an agent of a State government that received benefits in excess of $10,000 under a Federal program…" (Indictment paragraph 17). However, Defendant is not an "agent" of the State of Michigan. He is an elected member of the Michigan House of Representatives. The Michigan House of Representatives is a separate body politic from the State with its own budget, controlled by its members that receives funding from Michigan taxpayers. Mr. Inman's position does not make him an "agent" of the State of Michigan. He does not have the authority or capacity to bind the State of Michigan. He is not authorized to act on behalf of the State of Michigan. He is not an employee of the State of Michigan. He is not a servant, partner, director, officer or manager of the State of Michigan. He

is a "representative" *in the House of Representatives.* Technically, he is a representative of the constituency of the 104th legislative district. (definition of "agent", *18 USCS 666 (d)(1)*)

Mich. Const. art. 3, sec. 2 provides that the powers of government are divided into three separate but equal branches, the legislative, the executive and the judicial. The focus in the indictment is Mr. Inman's role as an elected member of the House of Representatives (Indictment, para. 1, 11) The Michigan House of Representatives is the "organization, government or entity" that must be the recipient of Federal funds to allow for Federal jurisdiction.

The statutory prohibition in 666 is entitled; "Theft or bribery concerning programs receiving Federal funds." The defendant must be "an agent" of a State, local or Indian tribal government that is the recipient in any one year of $10,000 or more in state funds. In *U.S. v. Cicco, 938 F.2d 441 (1991),* the government had to establish that the town of Guttenberg, NJ, not the state of New Jersey, received more than $10,000 in Federal funds to bring it within the ambit of the statute. In *Cotton v. Banks, 310 Mich App 104(2015),* the State of Michigan was dismissed from an Elliot-Larsen suit brought by a former staff member against a Michigan House Representative as the State could not be vicariously liable although the Court allowed the House of Representatives to be added as a party defendant.

The intention of the statute is to protect federal funds from local misappropriation. The history of the legislation shows that Congress was concerned with regulating the end uses of the 100s of 1000s of dollars provided to various entities by the Federal government so there could be some assurance that the dollars were not being misused. "The goal was to *protect federal funds* by authorizing federal prosecution of thefts and embezzlement from programs receiving *substantial federal support* even if the *property involved no longer belonged* to the federal

government." *U.S. v. Cicco, 938 F.2d 441 (1991)*. Thus, the intent of the federal statute was to protect federal dollars from improper incursion by local entities that have access, custody or control of the federal dollars.

In *United States v. Baroni, 909 F. 3d 550 (2018)*, William Baroni , former Deputy Executive Director of the New Jersey Port Authority, was charged under sec. 666 for his role in a scheme to punish Mayor Sokolich of the borough of Fort Lee for not endorsing then governor Chris Christie by reducing travel lanes on the George Washington bridge connecting New Jersey and New York through the borough of Fort Lee. By reducing the dedicated three travel lanes to one after the Mayor refused the request to endorse Christie, extraordinary gridlock occurred in Fort Lee. The case became known as "Bridgegate".

Baroni appealed his conviction under the statute arguing, among other things, that there was no proof that he "obtained or converted" Port Authority property and that it was worth in excess of $5,000. The Third Circuit Court of Appeals held that "conscripting fourteen Port Authority employees to do sham work in pursuit of no legitimate Port Authority aim" was sufficient proof of value in excess of $5,000 that was under the control of the governmental entity to support the conviction. Although *Baroni* and *Cicco* were cases prosecuted under the first portion of the statute (sec 666(a)(1)(A)), they still support that the prohibited acts be related to property connected to an entity receiving federal funds above the threshold amount. This is the intent and purpose of the regulation.

The "property" in question was Representative Inman's vote which does not belong to nor is it under the care, custody of control of the State of Michigan or the House of Representatives. The governmental entity to which Representative Inman belongs is the Michigan House of Representatives, which received no federal dollars in its budget. There is no

federal jurisdiction under the mandates of 18 USCS 666 to prosecute the defendant in a federal tribunal.  Count 2 must be dismissed.

### c. False statement to the FBI

Defendant is charged with lying to the FBI under 18 U.S.C. sec. 1001(a)(2) which states:

> **a)** Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--...

> **(2)** makes any materially false, fictitious, or fraudulent statement or representation...

To be responsible for a violation under this section, the government must establish that the FBI was within its jurisdiction at the time of the alleged statement.  If the government lacks jurisdiction to enforce Count I and Count II, then the matter is not within the jurisdiction of an executive branch of the Government.  The FBI was called in to investigate an alleged federal offense.  The government had the capacity to determine if there was an affect on commerce by the text messages sent by Defendant Inman or if the Michigan House of Representatives received $10,000 or more in federal funds before it obtained a search warrant for Mr. Inman's home and cellular phone.  To the extent, the government cannot establish jurisdiction under both Count 1 and Count 2,  Count 3 must be dismissed.

## II.  FALSE OR MISLEADING EVIDENCE WAS INTRODUCED TO THE GRAND JURY WHICH INFRINGED ON DEFENDANT'S CONSTITUTIONAL IMMUNITITES, PROTECTIONS AND RIGHTS AND RESULTED IN A CONSTITUTIONALLY DEFECTIVE INDICTMENT

The indictment, in paragraph 4, states that the MRCCM made "political contributions to the Defendant's candidate committee totaling $6,000" between the dates of "October 17 and May 16, 2018". First, the MRCCM did not make $6,000 in contributions to Mr. Inman's campaign during the time alleged. A review of his Campaign Committee report, a public document, shows donations totaling $2,000 all made before December 11 of 2017, fully six months before the measure was approved for a vote by the Michigan House. (Exhibit 2). Per Michigan statute, a Political Action Committee (PAC) may legally donate up to $10,000 to a legislator's campaign committee (MCL 169.252)

Even if additional funds were contributed to Mr. Inman's campaign fund by MRCCM, per the indictment the last such contribution was made before May 16, 2018. The Board of State Canvassers had not even certified the initiative petition for a vote by this time. Thus, no one of the contributions made by MRCCM were illegal or against the Campaign Finance Act.

By introducing this evidence before the Grand Jury the government ran directly afoul of the admonition of the United States Supreme Court in *McCormick v. United States, 500 U.S. 257 (1991)*. "Campaign contributions will not be authorized as the subject of a Hobbs Act prosecution unless they can be proven to have been given in return for the performance of or abstracting from an official act, otherwise any campaign contribution might constitute a violation." By reciting legitimate campaign contributions from MRCCM to Defendant Inman in the Indictment and then inferring in paragraph 10 of the indictment, "MRCCM provided no additional campaign contributions to the Defendant's candidate committee after receiving Defendant's text message on June 3, 2018", impermissibly infers that the campaign contributions received by Defendant Inman were somehow improper or illegal. It also

buttresses the government's argument in paragraph 17 that Mr. Inman's vote had a value of $5,000 or more.

Undoubtedly, based on the way the Indictment is written these arguments were used by the government in front of the Grand Jury, thus, building a criminal case against Defendant and influencing the Grand Jury to authorize charges against Defendant Inman based on legitimate political contributions.

The Government in paragraph 11 states that Defendant Inman voted "Yes" on the initiative and was, therefore, one of the majority who approved of the initiative petition, brought by the citizenry, to repeal Prevailing Wage. Representative Inman has an absolute immunity against prosecution for his vote. He also has an evidentiary privilege that bars the introduction of his vote into evidence in any judicial proceeding. Representative Inman's "Yes" vote on the House floor cannot be subject to civil or criminal prosecution under the Speech or Debate Clause, Art. 1 sec. 6 of the United States Constitution, *United States v. Brewster, 408 U.S. 501 (1972)* (found to apply to state legislators, Article IV, Section 11 of the Michigan Constitution, *United States v. Nelson, 486 Supp 464 (USDC, MIWD 1980))*. Defendant's vote holds both substantive immunity and an evidentiary privilege. Defendant has absolute immunity as to his vote and it cannot be used as evidence in a prosecution, *Nelson, supra*.

The obvious intent in the way the Government drafted paragraphs 10 and 11 was to suggest *because Defendant Inman received no more campaign contributions from MRCCM he elected to vote "Yes" to approve the initiative.* This was (and is) highly prejudicial to Defendant Inman and a violation of his Constitutional protections to not have his vote on the House floor used against him and, particularly, not to have a recitation of legal campaign

contributions tied to the vote allowing the government to argue to the Grand Jury that these actions are illegally connected to an "extortion" plan by Mr. Inman.

There can be no doubt that these matters were introduced to the Grand Jury and, likely, stressed as part of the Government's argument that Defendant Inman is an extortionist. This Indictment is constitutionally defective as a result of this impermissible evidence and must be quashed. Fed Rules Crim Proc R 12(b)(A)(v).

To the extent the Court does not apply this remedy, these matters should be stricken from the indictment as inadmissible evidence and impermissible argument. Further, the Defendant requests the production of the entire Grand Jury proceedings so the effect of this impermissible and unconstitutional argument by the government can be reviewed.

## III. DEFENDANT REQUESTS THE COURT ORDER THE GOVERNMENT TO IDENTIFY EVIDENCE IT INTENDS TO INTRODUCE TO THE JURY PURSUANT TO FED R CRIM PROC

The government has produced a Forensic Report which, appears to have extracted every piece of information from Mr. Inman's cellular phone including his Calendar, Call Log, Contacts, Locations, 2701 MMS messages, 9538 SMS messages, 2489 Data Files, etc. Defense counsel could not possibly review this information in time to file motions in limine regarding the evidentiary value or prejudicial substantial amount of text messages taken from Mr. Inman's phone. Many of these text messages are totally irrelevant to these proceedings. Some of these messages have associated privileges such as attorney-client. But in short, the Government should be ordered to specify precisely what information it intends to introduce

from this extraction so that the Defendant has proper notice and time to file motions if necessary as allowed by Rule 12(4)(B).

WHEREFORE, as to the offense alleged in Count I, there was no affect on commerce by defendant's alleged actions. As to Count II, the Michigan House of Representatives does not receive Federal monies in excess of $10,000 in the relevant one year period prior to the offense and does not fall under the jurisdiction of the federal statute. If there is no federal jurisdiction as to Count I and II, defendant cannot be found responsible under Count III. All counts of the Indictment lack required jurisdictional requirements and must be dismissed.

ADDITIONALLY, Defendant respectfully requests this Court to dismiss the indictment. The campaign contributions allegedly received by Defendant's Campaign Committee were received prior to the certification of the referendum, which was required before it would ever come to a vote. The use of these contributions in the indictment was a violation of Defendants legitimate right to receive campaign contributions and a violation of the cautionary use of a Hobbs Act prosecution. Further, the use of Defendant's "yes" vote was a violation of his immunities under the Speech and Debate Clause. These arguments impermissibly tainted the Grand Jury and the indictment must be dismissed. Finally, the Court, if it does not dismiss the indictment, should order a full transcription of the Grand Jury proceedings be produced to Defendant so the intent and effect of these improper arguments to the Grand Jury may be analyzed.

FINALLY, Defendant respectfully request this Court to require the Government to specify the evidence it intends to introduce at trial so Defendant may bring proper and timely motions in limine if necessary.

June 18, 2019

Respectfully,

Christopher K. Cooke  (P35034)
Neumann Law Group

EXHIBIT 1

# STATE OF MICHIGAN
# FISCAL YEAR 2017-18

# Appropriations
# Summary and Analysis





**Mary Ann Cleary, Director**

# AUGUST 2017

## HOUSE FISCAL AGENCY
## GOVERNING COMMITTEE

| | |
|---|---|
| Laura Cox | Fred Durhal III |
| Tom Leonard | Sam Singh |
| Dan Lauwers | Christine Greig |

## MICHIGAN HOUSE OF REPRESENTATIVES
## APPROPRIATIONS COMMITTEE

| | |
|---|---|
| Laura Cox, Chair | Roger Victory |
| Rob VerHeulen, Vice-Chair | Mary Whiteford |
| Chris Afendoulis | Jeff Yaroch |
| Sue Allor | Fred Durhal III, Minority Vice-Chair |
| John Bizon | Tom Cochran |
| Tommy Brann | Pam Faris |
| Edward Canfield, D.O. | Jon Hoadley |
| Shane Hernandez | Robert Kosowski |
| Larry Inman | David LaGrand |
| Tim Kelly | Kristy Pagan |
| Kimberly LaSata | Ronnie Peterson |
| Steve Marino | Yousef Rabhi |
| Aaron Miller | Sylvia Santana |
| Dave Pagel | Henry Yanez |
| Scott VanSingel | |

STATE OF MICHIGAN
## HOUSE OF REPRESENTATIVES



## HOUSE FISCAL AGENCY

**MARY ANN CLEARY, DIRECTOR**
P.O. BOX 30014 ◻ LANSING, MICHIGAN 48909-7514
PHONE: (517) 373-8080 ◻ FAX: (517) 373-5874
www.house.mi.gov/hfa

**GOVERNING COMMITTEE**

LAURA COX, CHAIR     FRED DURHAL III, MVC
TOM LEONARD, VC     SAM SINGH
DAN LAUWERS     CHRISTINE GREIG

August 2017

TO:  Members of the Michigan House of Representatives

FROM:  Mary Ann Cleary, Director

This *FY 2017-18 Appropriations Summary and Analysis* summarizes the enacted FY 2017-18 state budget. A *Glossary*, following the table of contents, explains terms used throughout this report to describe Michigan's budget. The *Budget Overview* provides information on resources used and major funding changes in the enacted FY 2017-18 budget; summary tables of appropriated funds and fund sources are also included. *Budget Detail* pages note major budget and boilerplate changes for each budget area.

When analyzing the budget, it is important to note the following:

**Adjusted Gross** is the amount to use when measuring the total amount of funding included in the state budget (including spending from federal sources).

**State Spending from State Sources (State Restricted plus GF/GP)** is the amount to use when measuring the amount of state resources collected from taxpayers to finance state spending.

**General Fund/General Purpose (GF/GP)** is the amount to use when measuring unrestricted state resources available for legislative allocation to various state programs.

Information in the *Budget Detail* section was provided by HFA Analysts; report production was coordinated by Kathryn Bateson, Administrative Assistant. House Fiscal Agency staff and their areas of responsibility are listed on the inside back cover of this publication. Please feel free to contact them, or me, if you have questions or need further information.

# TABLE OF CONTENTS

## *OVERVIEW*

Budget Overview ........................................................................................................... 2
Consensus Revenue Estimates ..................................................................................... 4
FY 2017-18 Balance Sheets .......................................................................................... 9
Charts:
    FY 2017-18 Enacted Adjusted Gross Appropriations ............................................. 12
    FY 2017-18 Enacted General Fund/General Purpose (GF/GP) Appropriations ....... 12
    FY 2017-18 Adjusted Gross Sources ...................................................................... 13
    FY 2017-18 GF/GP Distribution .............................................................................. 13
Summary Tables ..................................................................................................... 14-19

## *BUDGET DETAIL*

Capital Outlay ............................................................................................................. 22

Agriculture and Rural Development ............................................................................. 30
Community Colleges .................................................................................................... 34
Corrections .................................................................................................................. 37
Education (Department) ............................................................................................... 43
Environmental Quality ................................................................................................. 47
General Government Totals ......................................................................................... 51
    Attorney General .................................................................................................... 52
    Civil Rights .............................................................................................................. 55
    Executive Office ...................................................................................................... 56
    Legislature .............................................................................................................. 57
    Legislative Auditor General ..................................................................................... 59
    State (Department) .................................................................................................. 60
    Technology, Management, and Budget ................................................................... 62
    Treasury ................................................................................................................. 67
    Talent and Economic Development ......................................................................... 73
Health and Human Services ........................................................................................ 79
Higher Education ......................................................................................................... 95
Insurance and Financial Services .............................................................................. 100
Judiciary ................................................................................................................... 102
Licensing and Regulatory Affairs .............................................................................. 106
Military and Veterans Affairs ..................................................................................... 111
Natural Resources .................................................................................................... 115
School Aid ................................................................................................................. 119
State Police ............................................................................................................... 130
Transportation .......................................................................................................... 136

# LEGISLATURE
## Summary of FY 2017-18 Enacted Appropriations
## Article VIII, 2017 Public Act 107 (House Bill 4323)

**Analyst: Ben Gielczyk**

| | FY 2016-17 YTD as of 2/8/17 | FY 2017-18 Executive | FY 2017-18 House | FY 2017-18 Senate | FY 2017-18 Enacted | Difference: Enacted From FY 2016-17 YTD Amount | % |
|---|---|---|---|---|---|---|---|
| IDG/IDT | $0 | $0 | $0 | $0 | $0 | $0 | — |
| Federal | 0 | 0 | 0 | 0 | 0 | 0 | — |
| Local | 0 | 0 | 0 | 0 | 0 | 0 | — |
| Private | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 0 | 0.0 |
| Restricted | 4,275,800 | 4,277,700 | 4,277,700 | 4,277,700 | 4,277,700 | 1,900 | 0.0 |
| GF/GP | 143,227,800 | 150,297,100 | 148,897,100 | 150,597,100 | 150,597,100 | 7,369,300 | 5.1 |
| Gross | $147,903,600 | $154,974,800 | $153,574,800 | $155,274,800 | $155,274,800 | $7,371,200 | 5.0 |

*Notes: (1) FY 2016-17 year-to-date figures include mid-year budget adjustments through February 8, 2017. (2) Appropriation figures for all years include all proposed appropriation amounts, including amounts designated as "one-time."*

## Overview
This budget provides funding for the Legislative branch of state government, including the Legislative Council and agencies it governs, the Legislative Retirement System, and Property Management. The Legislature enacts the laws of Michigan, levies taxes, and appropriates funding from revenue collected for the support of public institutions and the administration of the affairs of state government. The Legislative Council provides a wide variety of essential services to members and staff of the Legislature. The Michigan Legislative Retirement System provides retirement allowances, survivors' allowances, and other benefits for members of the Legislature and their spouses, dependents, survivors, and beneficiaries. Property Management employees maintain, operate, and repair the House of Representatives Office Building, and Senate Office Building. The Michigan State Capitol Historic Site includes the Capitol Building, its grounds and parking lot, and the Michigan State Capitol Commission.

| Major Budget Changes from FY 2016-17 YTD Appropriations | | FY 2016-17 YTD (as of 2/8/17) | Enacted Change From YTD |
|---|---|---|---|
| **1. Legislature Operations** <br> Includes $10.5 million Gross ($10.5 million GF/GP) to reflect increased costs related to legislative staff and other operations. | Gross <br> Private <br> Restricted <br> GF/GP | $147,903,600 <br> 400,000 <br> 4,275,800 <br> $143,227,800 | $10,492,000 <br> 0 <br> 1,900 <br> $10,490,100 |
| **2. Legislative Information Technology Systems Design Project** <br> Includes $3.0 million GF/GP in one-time funding to support the design, development, and implementation of a legislative-wide integrated computer system. This represents a decrease of $3.0 million GF/GP from current year funding. The funds supplement a total of $9.0 million GF/GP appropriated in FYs 2015-16 and 2016-17. | Gross <br> GF/GP | $6,000,000 <br> $6,000,000 | ($3,000,000) <br> ($3,000,000) |
| **3. Criminal Justice Policy Commission Study** <br> Removes $500,000 GF/GP in FY 2016-17 one-time appropriations associated with the Criminal Justice Policy Commission study on the costs and savings of redirecting 17-year-olds from the adult court to the family court and juvenile justice systems. | Gross <br> GF/GP | $500,000 <br> $500,000 | ($500,000) <br> ($500,000) |
| **4. Legislative Corrections Ombudsman** <br> Includes $229,200 GF/GP increase in ongoing funding to augment current Ombudsman operations. | Gross <br> GF/GP | $729,200 <br> $729,200 | $229,200 <br> $229,200 |
| **5. Michigan Veterans Facility Ombudsman** <br> Includes $150,000 GF/GP increase to augment Michigan Veterans Facility Ombudsman operations. | Gross <br> GF/GP | $150,000 <br> $150,000 | $150,000 <br> $150,000 |

# STATE OF MICHIGAN
# FISCAL YEAR 2018-19

# Appropriations
# Summary and Analysis





**Mary Ann Cleary, Director**

# JULY 2018

## HOUSE FISCAL AGENCY
## GOVERNING COMMITTEE

| | |
|---|---|
| Laura Cox | Fred Durhal III |
| Tom Leonard | Sam Singh |
| Dan Lauwers | Christine Greig |

## MICHIGAN HOUSE OF REPRESENTATIVES
## APPROPRIATIONS COMMITTEE

| | |
|---|---|
| Laura Cox, Chair | Roger Victory |
| Rob VerHeulen, Vice-Chair | Mary Whiteford |
| Chris Afendoulis | Jeff Yaroch |
| Sue Allor | Fred Durhal III, Minority Vice-Chair |
| John Bizon | Tom Cochran |
| Tommy Brann | Pam Faris |
| Edward Canfield, D.O. | Jon Hoadley |
| Shane Hernandez | Robert Kosowski |
| Larry Inman | David LaGrand |
| Tim Kelly | Kristy Pagan |
| Kimberly LaSata | Ronnie Peterson |
| Steve Marino | Yousef Rabhi |
| Aaron Miller | Sylvia Santana |
| Dave Pagel | Henry Yanez |
| Scott VanSingel | |

STATE OF MICHIGAN
## HOUSE OF REPRESENTATIVES



## HOUSE FISCAL AGENCY

**MARY ANN CLEARY, DIRECTOR**
P.O. BOX 30014 ▪ LANSING, MICHIGAN  48909-7514
PHONE: (517) 373-8080 ▪ FAX: (517) 373-5874
www.house.mi.gov/hfa

**GOVERNING COMMITTEE**

| LAURA COX, CHAIR | FRED DURHAL III, MVC |
|---|---|
| TOM LEONARD, VC | SAM SINGH |
| DAN LAUWERS | CHRISTINE GREIG |

July 2018

TO:  Members of the Michigan House of Representatives

FROM:  Mary Ann Cleary, Director

This *FY 2018-19 Appropriations Summary and Analysis* summarizes the enacted FY 2018-19 state budget.  A *Glossary*, following the table of contents, explains terms used throughout this report to describe Michigan's budget.  The *Budget Overview* provides information on resources used and major funding changes in the enacted FY 2018-19 budget; summary tables of appropriated funds and fund sources are also included.  *Budget Detail* pages note major budget and boilerplate changes for each budget area.

When analyzing the budget, it is important to note the following:

**Adjusted Gross** is the amount to use when measuring the total amount of funding included in the state budget (including spending from federal sources).

**State Spending from State Sources (State Restricted plus GF/GP)** is the amount to use when measuring the amount of state resources collected from taxpayers to finance state spending.

**General Fund/General Purpose (GF/GP)** is the amount to use when measuring unrestricted state resources available for legislative allocation to various state programs.

Information in the *Budget Detail* section was provided by HFA Analysts; report production was coordinated by Kathryn Bateson, Administrative Assistant.  House Fiscal Agency staff and their areas of responsibility are listed on the inside back cover of this publication.  Please feel free to contact them, or me, if you have questions or need further information.

# TABLE OF CONTENTS

## *OVERVIEW*

Budget Overview........................................................................................................2
Consensus Revenue Estimates ...............................................................................4
FY 2018-19 Balance Sheets.....................................................................................9
Charts:
    FY 2018-19 Enacted Adjusted Gross Appropriations ........................................12
    FY 2018-19 Enacted General Fund/General Purpose (GF/GP) Appropriations .................12
    FY 2018-19 Adjusted Gross Sources.................................................................13
    FY 2018-19 GF/GP Distribution .........................................................................13
Summary Tables..................................................................................................14-19

## *BUDGET DETAIL*

Agriculture and Rural Development........................................................................22
Community Colleges...............................................................................................26
Corrections..............................................................................................................29
Education (Department)..........................................................................................35
Environmental Quality............................................................................................40
General Government Totals....................................................................................44
    Attorney General.................................................................................................45
    Civil Rights..........................................................................................................48
    Executive Office..................................................................................................49
    Legislature...........................................................................................................50
    Legislative Auditor General ...............................................................................51
    State (Department)..............................................................................................52
    Technology, Management, and Budget..............................................................55
    Treasury .............................................................................................................63
    Talent and Economic Development....................................................................69
Health and Human Services ..................................................................................75
Higher Education ....................................................................................................92
Insurance and Financial Services..........................................................................97
Judiciary..................................................................................................................99
Licensing and Regulatory Affairs.........................................................................102
Military and Veterans Affairs................................................................................105
Natural Resources................................................................................................108
School Aid.............................................................................................................113
State Police...........................................................................................................125
Transportation......................................................................................................130

# LEGISLATURE
## Summary of FY 2018-19 Enacted Appropriations
## Article VIII, 2018 Public Act 207 (Senate Bill 848)

**Analyst: Ben Gielczyk**

| | FY 2017-18 YTD as of 2/7/18 | FY 2018-19 Executive | FY 2018-19 House | FY 2018-19 Senate | FY 2018-19 Enacted | Difference: Enacted From FY 2017-18 YTD Amount | % |
|---|---|---|---|---|---|---|---|
| IDG/IDT | $0 | $0 | $0 | $0 | $0 | $0 | -- |
| Federal | 0 | 0 | 0 | 0 | 0 | 0 | -- |
| Local | 0 | 0 | 0 | 0 | 0 | 0 | -- |
| Private | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 0 | 0.0 |
| Restricted | 4,277,700 | 4,394,300 | 4,394,300 | 4,394,300 | 4,394,300 | 116,600 | 2.7 |
| GF/GP | 150,597,100 | 152,487,500 | 152,487,500 | 152,718,300 | 153,318,200 | 2,721,100 | 1.8 |
| Gross | $155,274,800 | $157,281,800 | $157,281,800 | $157,512,600 | $158,112,500 | $2,837,700 | 1.8 |
| FTEs | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | -- |

*Notes: (1) FY 2017-18 year-to-date figures include mid-year budget adjustments through February 7, 2018. (2) Appropriation figures for all years include all proposed appropriation amounts, including amounts designated as "one-time."*

## Overview
This budget provides funding for the Legislative branch of state government, including the Legislative Council and agencies it governs, the Legislative Retirement System, and Property Management. The Legislature enacts the laws of Michigan, levies taxes, and appropriates funding from revenue collected for the support of public institutions and the administration of the affairs of state government. The Legislative Council provides a wide variety of essential services to members and staff of the Legislature. The Michigan Legislative Retirement System provides retirement allowances, survivors' allowances, and other benefits for members of the Legislature and their spouses, dependents, survivors, and beneficiaries. Property Management employees maintain, operate, and repair the Cora Anderson House of Representatives Office Building and Binsfield Senate Office Building. The Michigan State Capitol Historic Site includes the Capitol Building, its grounds and parking lot, and the Michigan State Capitol Commission.

| Major Budget Changes from FY 2017-18 YTD Appropriations | | FY 2017-18 YTD (as of 2/7/18) | Enacted Change From YTD |
|---|---|---|---|
| *1. Legislature Operations* Reflects increased costs of $5.1 million Gross ($5.0 million GF/GP) related to Legislative staff and other operations. | Gross | $155,274,800 | $5,087,700 |
| | Private | 400,000 | 0 |
| | Restricted | 4,277,700 | 116,600 |
| | GF/GP | $150,597,100 | $4,971,100 |
| *2. Legislative Information Technology Systems Design Project* Includes a net reduction of $2.3 million GF/GP in one-time appropriations related to operational and implementation costs associated with the Legislative IT System Design Project. Replaces $3.0 million in FY 2017-18 one-time appropriations with $750,000 GF/GP in FY 2018-19 one-time appropriations. | Gross | $3,000,000 | ($2,250,000) |
| | GF/GP | $3,000,000 | ($2,250,000) |

## Major Boilerplate Changes from FY 2017-18

There are no major boilerplate changes in FY 2018-19.

# LEGISLATIVE AUDITOR GENERAL
## Summary of FY 2018-19 Enacted Appropriations
## Article VIII, 2018 Public Act 207 (Senate Bill 848)

**Analyst: Ben Gielczyk**

| | FY 2017-18 YTD as of 2/7/18 | FY 2018-19 Executive | FY 2018-19 House | FY 2018-19 Senate | FY 2018-19 Enacted | Difference: Enacted From FY 2017-18 YTD Amount | % |
|---|---|---|---|---|---|---|---|
| IDG/IDT | $5,709,200 | $5,823,400 | $5,823,400 | $5,823,400 | $5,823,400 | $114,200 | 2.0 |
| Federal | 0 | 0 | 0 | 0 | 0 | 0 | -- |
| Local | 0 | 0 | 0 | 0 | 0 | 0 | -- |
| Private | 0 | 0 | 0 | 0 | 0 | 0 | -- |
| Restricted | 1,969,400 | 2,008,800 | 2,008,800 | 2,008,800 | 2,008,800 | 39,400 | 2.0 |
| GF/GP | 16,607,600 | 17,105,800 | 17,855,800 | 17,105,800 | 17,105,800 | 498,200 | 3.0 |
| Gross | $24,286,200 | $24,938,000 | $25,688,000 | $24,938,000 | $24,938,000 | $651,800 | 2.7 |
| FTEs | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | 0.0 | -- |

*Notes: (1) FY 2017-18 year-to-date figures include mid-year budget adjustments through February 7, 2018.  (2) Appropriation figures for all years include all proposed appropriation amounts, including amounts designated as "one-time."*

### Overview
The Legislative Auditor General is responsible for conducting post financial and performance audits of state government operations.  Audit reports provide a continuing flow of information to assist the Legislature in its oversight of approximately 100 individual state funds.  Audit reports provide citizens with a measure of accountability and assist state departments and agencies in improving financial management of their operations.  The goal of the Legislative Auditor General is to improve accounting and financial reporting practices and promote effectiveness, efficiency, and economy in state government.  The mission is to improve the accountability of public funds and to improve the operations of state government for the benefit of the citizens of the state.

| Major Budget Changes from FY 2017-18 YTD Appropriations | | FY 2017-18 YTD (as of 2/7/18) | Enacted Change From YTD |
|---|---|---|---|
| **1.  Auditor General Operations** | Gross | $24,286,200 | $651,800 |
| Reflects increased costs of $651,800 Gross ($498,200 GF/GP) related to | IDG | 5,709,200 | 114,200 |
| Auditor General staff and other operations. | Restricted | 1,969,400 | 39,400 |
| | GF/GP | $16,607,600 | $498,200 |

### Major Boilerplate Changes from FY 2017-18

There are no major boilerplate changes in FY 2018-19.

SOS Home (http://www.michigan.gov/sos)



Jocelyn Benson, Secretary of State
Department of State

(http://www.michigan.gov/sos/0,1607,7-127----,00.html)

## Michigan Campaign Statement Contributions

- ☐ **Committee Name:** LARRY INMAN FOR STATE REPRESENTATIVE
- ☐ **Statement Type:** AMENDED ANNUAL CS
- ☐ **Statement Year:** 2018
- ☐ **Schedule:** ITEMIZED DIRECT CONTRIBUTIONS

### Matches 1 – 28 of 28

| Receiving Committee | Committee ID-Type | Schedule Type | Description | Received From | City State Zip | Date | Amount |
|---|---|---|---|---|---|---|---|
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *MICH BEER AND WINE WS PAC* 332 TOWNSEND | LANSING MI 48933 | 11/03/2017 | $2,500.0( |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *JULIA AMOS* P.O. BOX 536 ADMINISTRATOR EDWARD JONES | ELK RAPIDS MI 49629 | 11/13/2017 | $1,000.0( |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *MICH REGIONAL COUNCIL OF CARP PAC* 400 TOWER RENAISSANCE CENTER SUITE 1010 | DETROIT MI 48243 | 12/11/2017 | $1,000.0( |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *HEALTH PAC* 2112 UNIVRSITY PARK DRIVE | OKEMOS MI 48864 | 10/24/2017 | $1,000.0( |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *MICHIGAN CHAMBER PAC* 600 WALNUT | LANSING MI 48933 | 10/24/2017 | $750.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *MICH REGIONAL COUNCIL OF CARP PAC* 400 TOWER RENAISSANCE CENTER SUITE 1010 | DETROIT MI 48243 | 10/27/2017 | $500.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *MICH LEAGUE OF CON VOTERS* 3029 MILLER ROAD | ANN ARBOR MI 48103 | 11/30/2017 | $500.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *BLUE CROSS BLUE SHIELD OF MICH PAC* 232 S CAPITAL AVE | LANSING MI 48933 | 11/02/2017 | $500.00 |

| Receiving Committee | Committee ID-Type | Schedule Type | Description | Received From | City State Zip | Date | Amount |
|---|---|---|---|---|---|---|---|
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | MICH REGIONAL COUNCIL OF CARP PAC 400 TOWER RENAISSANCE CENTER SUITE 1010 | DETROIT MI 48243 | 10/27/2017 | $500.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | CLARK HILL PAC 500 WOODWARD STE 3500 | DETROIT MI 48226 | 10/30/2017 | $250.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | MICH AGGREGATES ASSOC PAC 6015 ST. JOE HWY 103 | LANSING MI 48917 | 11/02/2017 | $250.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | MICH ASSOC OF NURSE ANESTHETISTS 1390 EISENHOWER PLACE | ANN ARBOR MI 48108 | 10/26/2017 | $250.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | SANFORD SZIRTES 29717 DEED RUN CEO HEALTHCALL | FARMINGTON HILLS MI 48331 | 10/27/2017 | $250.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | CMS ENERGY CORP EMPLOYEES ONE ENERGY PLAZA EP8-267 | JACKCON MI 49201 | 11/10/2017 | $250.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | ASSOC BUILDERS & CONTRACTOR PAC 230 N WASHINGTON SQ STE 202 | LANSING MI 48933 | 11/09/2017 | $150.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | COUNTY ROAD ASSOC ROADS PLUS 417 SEYMOUR AVE. SUITE 1 | LANSING MI 48933 | 11/03/2017 | $150.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | DYKEMA GOSSETT STATE PAC 201 TOWNSEND STREET SUITE 900 | LANSING MI 48933 | 11/02/2017 | $150.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | MICHIGAN MANUFACTURERS ASSOC 620 S. CAPITAL AVE | LANSING MI 48901 | 11/07/2017 | $150.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | DELTA PAC P.O. BOX | OKEMOS MI 48805 | 10/23/2017 | $150.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451–CAN | DIRECT | | KAROUB ASSOC PAC 121 W. ALLEGAN STREET | LANSING MI 48933 | 12/01/2017 | $150.00 |

Michigan Campaign Statement of Contributions

| Receiving Committee | Committee ID-Type | Schedule Type | Description | Received From | City State Zip | Date | Amount |
|---|---|---|---|---|---|---|---|
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *DANIELLE BRUCI* 28201 RUEHLE SALES STRYKER MEDICAL | ST. CLAIR SHORES MI 48081 | 10/24/2017 | $150.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *RHONDA GANT* 6830 HOLMES HWY CONSULTANT GRANT CONSULTING GROUP LLC | EATON RAPIDS MI 48827 | 10/31/2017 | $150.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *KERRY KAYSSERIAN* 1742 N WEST SILVER LAKE | TRAVERSE CITY MI 49685 | 10/23/2017 | $100.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *CENTURYLINK INC EMPLOY PAC* 1099 NEW YORK AVE | WASHINGTON DC 20001 | 11/09/2017 | $100.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *MELISSA CUPP* 230 N. WASHINGTON SQUARE SUITE 200 | LANSING MI 48933 | 11/01/2017 | $50.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *ELIZABETH WEIHL* 230 N WASHINGTON SQUARE SUITE200 | LANSING MI 48933 | 11/01/2017 | $50.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *PETER RUDDELL* 230 N. WASHINGTON SQUARE SUITE 200 | LANSING MI 48933 | 11/01/2017 | $50.00 |
| LARRY INMAN FOR STATE REPRESENTATIVE (https://cfrsearch.nictusa.com/committees/516451) | 516451– CAN | DIRECT | | *KEVIN FAGAN* 14320 KERCHEVAL | DETROIT MI 48068 | 12/06/2017 | $5.00 |

**Matches 1 – 28 of 28**

Copyright @ 2019 State of Michigan

FOIA (http://www.michigan.gov/sos/0,4670,7-127--357908--,00.html)
Transparency (http://www.michigan.gov/openmichigan/0,4648,7-266-58520---,00.html)
Office of Regulatory Reinvention (http://www.michigan.gov/lara/0,4601,7-154-35738---,00.html)
Forms (http://www.michigan.gov/sos/0,1607,7-127-1640_11777---,00.html)
FAQ (http://www.michigan.gov/sos/0,1607,7-127-12539---F,00.html)
Online Services (https://onlineservices.michigan.gov/ExpressSOS)    SOS Home (http://www.michigan.gov/sos)

Contact the Secretary of State (http://www.michigan.gov/sos/0,4670,7-127--25634--,00.html)
State Web Sites (http://www.michigan.gov/sos/0,1607,7-127----A,00.html)

Michigan.gov Home (http://www.michigan.gov/)    Michigan News (http://www.michigan.gov/minewswire)
Policies (http://www.michigan.gov/sos/0,4670,7-127--281460--,00.html)