UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                      No. 1:19-CR-117-RJJ

v.                                               Hon. Robert J. Jonker
                                                        Chief U.S. District Judge

LARRY CHARLES INMAN,

    Defendant.
_____/

**GOVERNMENT'S BRIEF RESPONDING TO THE
COURT'S FIRST AMENDMENT CONCERNS**

      The United States of America, by and through United States Attorney Andrew Byerly Birge and Assistant United States Attorneys Christopher M. O'Connor and Ronald M. Stella, respectfully submits this brief responding to the First Amendment concerns raised by the Court at the August 9, 2019 hearing on Defendant Larry Inman's Motion to Dismiss the Indictment.

      At the hearing, this Court asked the parties to comment on whether the Supreme Court's decision in *Citizens United v. Federal Election Comm'n*, 130 S. Ct. 876 (2010), bears on Inman's motion to dismiss or more generally, the government's ability to prosecute Inman for the crimes alleged in counts 1 and 2 of the indictment. *Citizens United* does not affect the indictment in this case in any way. Nothing in *Citizens United* gave Inman a First Amendment right to attempt to extort money from the MRCCM or corruptly solicit a campaign contribution in exchange for an official act. And *Citizens United* does not call into question the

government's ability to prosecute those actions under 18 U.S.C. §§ 1951 or 666(a)(1)(B). After *Citizens United*, the Supreme Court reaffirmed that Congress retains the ability to pursue the permissible goal of combatting political corruption or its appearance. *See McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 206-207 (2014) ("[W]e do not doubt the compelling nature of the 'collective' interest in preventing corruption in the electoral process.") Political responsiveness is "at the heart of the democratic process," but the "Government has a strong interest, no less critical to our democratic system, in combatting corruption and its appearance." *Id.* at 227.

The First Amendment to the Constitution protects political association and political expression, but does not protect acts of attempted extortion or bribery. *Buckley v. Valeo*, 424 U.S. 1, 15 (1976). The right of political association is not absolute. *Id.* at 25. Indeed, the Supreme Court has long made clear that the First Amendment rights of free speech and political association are not absolute. *See, e.g.*, *Schenck v. United States*, 249 U.S. 47, 52 (1919) ("The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic."); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (First Amendment does not protecting "fighting words" that inflict injury or tend to incite immediate breach of the peace); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (First Amendment does not protect speech or writing "used as an integral part of conduct in violation of a valid criminal statute"); *U.S. Civil Service Comm'n v. National Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 567

(1973) ("Neither the right to associate nor the right to participate in political activities is absolute in any event.")

For more than 40 years, the United States Supreme Court has repeatedly recognized that the electoral system must be protected from "corruption and the appearance of corruption . . . ." *Buckley*, 424 U.S. at 25; *McCutcheon*, 572 U.S. at 191.  The Supreme Court has affirmed certain campaign finance laws that balance the constitutional right to political speech and the strong interest in preventing political corruption.  At the same time, the Court has expressed the view that Congress retains the ability to prohibit "cash-for-votes exchanges," "quid pro quo arrangements," and "bribery of public officials."  *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 143, 150 (2003) (citations and quotations omitted).

For example, the Supreme Court has consistently upheld federal laws restricting the amount of money that a donor can contribute to a particular candidate for public office.  Individual campaign contribution limits (also called base limits) are constitutionally valid even though they impose modest restrictions on a contributor's First Amendment right to political speech because such limits deter actual "quid pro quo" corruption and help avoid the appearance of such corruption. *Buckley*, 424 U.S. at 25-26; *McCutcheon*, 207-08.  The Supreme Court deferred to Congress's determination that large direct contributions by an individual to a political candidate might lead to a political quid pro quo.  Limitations on contributions to a candidate for public office "serve[] an interest in protecting 'the integrity of our system of representative democracy." *McConnell*, 540 U.S. at 120

3

(quoting *Buckley*, 424 U.S. at 26-27). Carefully constructed limitations on campaign contributions "tangibly benefit public participation in political debate." *Id.* at 136. Likewise, although public disclosure requirements that reveal the identity of a contributor to a particular candidate may have a "chilling effect" on political participation if a potential contributor does not want to be identified as supporting a particular candidate, such disclosure requirements also are a constitutional means to prevent corruption. *See Buckley*, 424 U.S. at 60-83 ("disclosure serves information functions, as well as the prevention of corruption and the enforcement of the contribution limitations"); *Citizens United*, 558 U.S. at 366-71 (upholding disclaimer and disclosure requirements).

In *Citizens United*, the Supreme Court held that the government cannot suppress corporate independent expenditures by forbidding campaign contributions from corporate entities. *Id.* at 372. In so doing, the Court overruled *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990), which held that political speech may be banned based on corporate identity, and overruled part of the holding in *McConnell* that upheld restrictions on corporate independent expenditures. *Id.* at 318, 365. The Court determined that the government may not suppress political speech based on the "speaker's corporate identity." *Id.* at 365. Other parts of the federal campaign law at issue, such as disclaimer and disclosure requirements, were affirmed as valid exercises of congressional power to prevent corruption in campaigns and elections even though such laws may have a chilling effect on political speech. *Id.* at 366-71.

4

In 2014, after *Citizens United* and two years before *McDonnell v. United States,* 136 S. Ct. 2355 (2016), the Supreme Court was called upon to determine if limitations on the aggregate amount of money a contributor may donate to all political candidates or committees are a constitutional exercise of congressional power to prevent corruption. *See McCutcheon*, 572 U.S. at 192. The Court held that aggregate limits on contributions to multiple candidates or committees are invalid under the First Amendment. *Id.* at 193. However, *McCutcheon* reaffirmed the existence of a "constitutional line between the permissible goal of avoiding corruption in the political process and the impermissible desire simply to limit political speech." *Id.* at 192.

Importantly, *McCutcheon* reiterated that laws targeting quid pro quo corruption or its appearance (which the Court described as "dollars for political favors") are constitutionally valid. *Id.* The plurality opinion observed that "*quid pro quo* corruption occurs when 'elected officials are influenced to act contrary to their obligations of office by the prospect of financial gain to *themselves* or infusions of money into *their* campaigns'" *Id.* at 225 (quoting *Federal Election Comm'n v. National Conservative Political Action Comm.*, 470 U.S. 480, 497 (1985)). The Court's opinion repeatedly recognizes that the government has a compelling interest in preventing and combatting actual and perceived corruption in elections. *Id.* at 206-07, 227.

In summary, *Citizens United* recognized First Amendment protection to corporate political speech in the form of independent campaign expenditures. And

5

*McCutcheon* invalidated restrictions on aggregate contributions to multiple candidates or committees.[1]  Neither decision inhibits the government's ability to prosecute an attempt by a political candidate to extort money or solicit campaign contributions where there is an allegation of a quid pro quo.  In the government's view, even the "fullest and most urgent application" of the First Amendment does not protect such actions.  *McCutcheon*, 572 U.S. at 191-92.  Indeed, both *Citizens United* and *McCutcheon* expressly reaffirmed the government's compelling interest in preventing and addressing quid pro quo corruption at the same time the Court struck down certain restrictions on corporate and aggregate contributions.  Although both cases recognize certain First Amendment rights to participate in political campaigns, nothing in those decisions undermined the Court's longstanding view that quid pro quo agreements involving campaign contributions may constitute a violation of federal anti-corruption laws.

Defendants in other cases have attempted, without success, to cite *Citizens United* and *McCutcheon* for the proposition that the First Amendment immunizes them from prosecution when campaign contributions are involved in the alleged criminal activity.  In *United States v. Menendez*, 132 F. Supp. 3d 635, 638-39 (D.N.J. 2012), the defendants were charged with conspiracy to commit bribery and honest services wire fraud and related crimes.  The district court rejected the defendants'

---

[1] Limitations on direct contributions to candidates remain constitutionally valid restrictions on political speech and expression.  *See Citizens United*, 558 U.S. at 357-359; *McCutcheon*, 572 U.S. at 209, 221 (observing that such laws "serve[] the permissible objective of combatting corruption," even though such laws are preventative and "a prophylactic measure") (citing *Citizens United*, 558 U.S. at 357).

6

attempt to re-characterize the criminal charges as protected political speech where the indictment alleged a quid pro quo bribery scheme. *Id.* at 621. The defendants sought dismissal of the indictment before trial based on the holdings in *Citizens United* and *McCutcheon*. The district court denied the motion to dismiss the indictment, finding: "Nothing in either *Citizens United* or *McCutcheon* implies that the First Amendment prevents prosecution of an alleged conspiracy in which things of value were exchanged for official acts."

After trial, the court denied a motion for acquittal based on the same First Amendment arguments. *See United States v. Menendez*, 291 F. Supp. 3d 606, 623 (D.N.J. 2018). The district court held that "nothing in *Citizens United* or related cases implies a First Amendment bar to bribery prosecutions. On the contrary, those decisions suggest an ongoing concern with precisely the type of dollars-for-official-action exchange that is at the core of the Government's allegations in this case." *Id.* at 621. *See also* Eugene Temchenko, Note, *A First Amendment Right to Corrupt Your Politician*, 103 Cornell L. Rev. 465, 480 (2018) (observing that Governor McDonnell, in his brief to the Supreme Court, argued that the federal bribery statute implicates First Amendment rights after *Citizens United*, which the Supreme Court neither addressed nor cited in its opinion). *See generally Gil Ramirez Group, L.L.C.* v. *Marshall*, 765 F. App'x 970, 977 (5th Cir. 2019) ("The Supreme Court was quite clear that the acceptance of bribes in exchange for votes or the exertion of pressure to obtain other officials' votes continues to be unprotected by the First Amendment.") (citing *McDonnell*, 136 S. Ct. at 2370-72).

In this case, when Inman solicited the MRCCM for campaign contributions in exchange for his vote on the prevailing wage repeal, the rule of law warned that an attempt to obtain a campaign contribution in exchange for an official act is subject to criminal prosecution in federal court. Although *McCutcheon* recognizes that "the line between *quid pro quo* corruption and general influence may seem vague at times," *McCutcheon*, 572 U.S. at 209, this Court need not attempt to define the outer boundaries of federal extortion and bribery laws. Any attempt to define the outer boundaries of federal anti-corruption law would be based on hypotheticals, not on the quid pro quo alleged in the indictment. Even the Supreme Court has not done so beyond requiring evidence of an explicit, but not express, quid pro quo when campaign contributions are involved. *See McCormick v. United States*, 500 U.S. 257 (1991); *Evans v. United States*, 504 U.S. 255 (1992).

Finally, the indictment does not require this Court to determine the line between quid pro quo corruption and lawful influence. The indictment does <u>not</u> accuse Inman of violating the law by providing the MRCCM with unusual access to him or his staff, by arranging meetings for the union, lobbying another public official on the union's behalf, or accepting valuable gifts from the MRCCM. Moreover, the indictment does <u>not</u> allege that he violated federal law by accepting and depositing campaign contributions from the MRCCM in 2017 and early 2018. Rather, counts 1 and 2 of the indictment accuse Inman of attempting to obtain additional campaign contributions from the MRCCM in exchange for his "No" vote on the prevailing wage repeal through his communications with MRCCM

representatives between June 3 and 5, 2018. This Court need only accurately and fairly explain to the trial jury the elements of the charged offenses within the context of the evidence presented at trial and the specific allegations contained within the indictment in this case. *See, e.g.*, *United States v. Dimora*, 750 F.3d 619, 624-25 (6th Cir. 2014) (affirming bribery conviction where the "instructions fairly trace the line between permissible gifts and impermissible bribes").

## Conclusion

Neither the First Amendment nor the U.S. Supreme Court's decisions in *Citizens United* and *McCutcheon* provide a valid basis on which to dismiss the attempted extortion and bribery charges in the Indictment for which Inman has been called to answer.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: August 28, 2019        /s/ *Christopher M. O'Connor*
CHRISTOPHER M. O'CONNOR
RONALD M. STELLA
Assistant United States Attorneys

United States Attorney's Office
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
christopher.oconnor@usdoj.gov
ron.stella@usdoj.gov