UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs

LARRY CHARLES INMAN,

        Defendant.

Case No. 1:19-cr-117
Hon. Robert J. Jonker
Hon. Phillip J. Green

_____/

Christopher M. O'Connor (P71846)
Assistant United States Attorney
330 Ionia Ave NW
Grand Rapids, MI 49503-2504
(616) 456-2404
*Christopher.oconnor@usdoj.gov*

Christopher K. Cooke (P35034)
NEUMANN LAW GROUP
Attorney for the Defendant
300 East Front Street, Suite 445
Traverse City, MI 49684
(231) 221-0050
*chris@neumannlawgroup.com*

Ronald M. Stella (P45316)
Assistant United States Attorney
330 Ionia Ave NW
Grand Rapids, MI 49503-2504
(616) 456-2404
*Ron.stella@usdoj.gov*

_____/

## DEFENDANT LARRY CHARLES INMAN'S TRIAL BRIEF

NOW COMES THE DEFENDANT LARRY CHARLES INMAN, by and through his attorneys of record NEUMANN LAW GROUP and hereby submits his trial brief

**The Indictment**

        Defendant Inman is charged in a three count indictment. Count 1 is Attempted Extortion Under Color of Official Right in violation of U.S.C. sec 1951 (the Hobbs Act). Count 2 is Solicitation of a Bribe in violation of 18 U.S.C. sec 666(a)(1)(B). Count 3 is False Statement to the FBI in violation of 18 U.S.C. sec 1001(a)(2). All charges arise from incidents

surrounding a vote by the Michigan House of Representatives on an initiative petition intended to repeal Michigan's "Prevailing Wage Law."

The Indictment recites *two* text messages sent from Mr. Inman's cell phone to a representative of the Michigan Regional Council of Carpenters and Millwrights ("MRCCM") on June 3 and 4, 2018, several days before the June 6, 2018 vote which approved the repeal. The allegation is that these text messages were sent in an attempt by Defendant Inman to obtain campaign donations in exchange for his favorable vote on the initiative petition (a "No" majority vote of either the Michigan House or Senate was the desired result for MRCCM).

## LEGAL ISSUES THAT MAY ARISE AT TRIAL

Defendant has raised many jurisdictional issues pre trial and to the extent the Court has not foreclosed a jury review of these issues, they will also be presented to the jury.

### I. Jurisdictional Requirements

All three charges have specific jurisdictional requirements.

**a. The Hobbs Act**

The Hobbs Act prohibits "Interference with Commerce by Threats or Violence" and states:

A violation of the Hobbs Act requires a defendant "to affect commerce" by "robbery or extortion". The claimed affect on commerce was the alleged offer, made via text message, by Representative Inman to a MRCCM official to vote "No" on the initiative repealing the Prevailing Wage Law and thus send it to the general ballot in the state election in November. The indictment does not allege any effect on commerce through this action by the Defendant. However, the Government has taken the position that if the MRCCM makes purchases of any

kind through the internet, such as on Amazon, this would be an adequate connection with interstate commerce to allow jurisdiction to attach. The defendant disagrees with this interpretation of the statute. The relevant jury instruction states:

> (E) Conduct affects interstate commerce if it in any way interferes with or changes the movement of goods, merchandise, money, or other property in commerce between different states. Any effect at all on commerce is enough.
>
> (1) This includes obtaining money that belonged to a business entity which customarily purchased goods from outside the State of Michigan, or that engaged in business outside the State of Michigan if defendant's conduct made that money unavailable to the business entity for the purchase of such goods or the conducting of such business. (17.02(2)(E)).

It is believed that the MMRMC, the alleged victim, is not engaged in business outside the State of Michigan. To the degree and extent that an alleged effort by defendant would have a "realistic probability to deplete the assets" of the MMRMC so it would have had less resources to spend on interstate commerce remains to be seen based on the currently unknown proofs to be offered by the government.

Further, what is alleged in the Indictment is a claim that the defendant attempted to obtain an otherwise legal campaign contributions in exchange for a "No" vote on the Prevailing Wage initiative petition. To violate the Hobbs Act when only legal campaign contributions are solicited there must be a specific *quid pro quo* or "you do this and I'll do that". Thus, the only text messages or other evidence that comes before the jury should be those communications that specifically and unquestionably reflect that the defendant agreed to vote a specific way if a specific campaign contribution was made and the demanded contribution was to be received *before* the vote. Otherwise, it cannot be a "quid" (you do this) and "pro quo" (I'll do that).

To hold otherwise and allow in other text messages or evidence that is not carefully vetted will violate the First Amendment rights of the defendant in recording his vote and expand the reach of the Hobbs Act into unlimited territory.

This Court has ruled that a "carefully crafted" jury instruction will satisfy the First Amendment and overbreadth concerns that have been raised. Such a jury instruction will have little protection for the defendant's rights if the evidence allowed into this trial is not similarly carefully vetted. It is believed that the government will attempt to introduce evidence of other acts or text messages that are perfectly legal requests for campaign contributions and are not tied do any specific "quid". The government will try to argue that other text messages with other lobbyists or legislators reflect or illuminate the meaning of the two text messages that allegedly support the Indictment. These other tangential text messages or communications had *after* the vote are not violations of the law. General request for legal campaign contributions to weather upcoming political battles based on how the legislator *has already voted* are not violations of the law and should not be admitted in this case.

This is the holding of the Supreme Court in *McCormick v. U.S., 500 U.S. 257 (1991)*. The Court held that to find that legislators:

> "commit the federal crime of extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to take property from another, with his consent, "under color of official right". To hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as

election campaigns are financed by private contributions or expenditures, *as they have been from the beginning of the Nation." McCormick v. U.S., 500 U.S. 257 (1991).*

It is not a violation of the Hobbs Act for a legislator, who has received contributions or other benefits from a PAC to support legislation favorable to the PAC. "Campaign contributions will not be authorized as the subject of a Hobbs Act prosecution unless they can be proven to have been given in return for the performance of or abstracting from an official act, otherwise any campaign contribution might constitute a violation." *McCormick v. United States, 500 U.S. 257 (1991).*

This Court has cautioned:

> "More specifically what I see as alleged is basically a claim that a state legislator is criminally exposed because that person solicited campaign donations that would in themselves be legal and in fact under *Citizens United* protected, First Amendment protected, and he did it for help defending what he expected to be a controversial vote. And by defending, *I mean in the campaign arena." ECF 44 PageID.289*

And,

> "..if too broad a view of the Hobbs Act or even the bribery act is advanced in a prosecution, it's not just the particulars of this case but it's what happens to all the other people who are engaging in the political process. Will they in a sense silence themselves or not step forward with the view that they would otherwise bring because they are worried about criminal liability?" *ECF 44 PageID.292*

Thus, the government's evidence and argument must be limited in scope to the two text messages alleged in the Indictment as the "quid pro quo" that was a claimed violation of the Hobbs Act. All other evidence introduced before the jury must be carefully focused only on

actions or statements by the defendant and other witnesses specifically tied to the alleged "quid pro quo."

Count I is also charged as an attempt. It is a specific intent crime. An attempt requires the specific intent to commit the crime *and* a "substantial step" in completion of the crime. The Sixth Circuit generally defined the two requisite elements of an attempt as: "(1) an intent to engage in criminal conduct and (2) the performance of one or more overt acts which constitute a substantial step towards the commission of the substantive offense." *United States v. Pennyman, 889 F.2d 104, 106 (6th Cir.1989)* ("The government must establish two essential elements: (1) the intent to engage in the proscribed criminal activity, and (2) the commission of an overt act which constitutes a substantial step towards commission of the proscribed criminal activity"). The act and intent are ultimately separate inquiries. *United States v. Bilderbeck*, 163 F.3d at 975.

**b. Bribery**

Defendant Inman is charged with Solicitation of a Bribe (Count 2) in violation of 18 U.S.C. sec 666(a)(1)(B). To establish this offense the government must prove:

    a. the defendant was an agent of an organization, government or agency;

    b. in a one-year period *that* organization, government or agency received federal benefits in excess of $10,000;

    c. defendant corruptly solicited or demanded for the benefit of any person, or accepted or agreed to accept, anything of value from a person;

    d. intending to be influenced or rewarded;

e. in connection with any business, transaction, or series of transactions of such organization, government, or agency;

f. the value of that property was at least $5,000. *United States v. Abbey, 452 F. Supp 2d 766 (2006).*

Defendant maintains that Michigan House of Representatives does not qualify as an "organization, government or agency" that " received federal benefits in excess of $10,000" in the one-year period of time pre-dating or post-dating the charged offence. The Michigan House of Representatives, a separate constitutional body from the State of Michigan, *receives no Federal funds.* Defendant is not an "agent" of the State of Michigan. He is an elected member of the Michigan House of Representatives. He does not have the authority or capacity to bind the State of Michigan. He is not authorized to act on behalf of the State of Michigan. He is not an employee of the State of Michigan. He is not a servant, partner, director, officer or manager of the State of Michigan. He is a "representative" *in the House of Representatives.* Technically, he is a representative of the constituency of the 104th legislative district. (definition of "agent", *18 USCS 666 (d)(1))*

The case of *United States v. Liscomb, 299 F.3d 303 (5th Cir. 2002)* cited by the Government and the Court as supporting the jurisdictional reach of 666 in fact supports the argument of the defendant that the specific unit of government of which the defendant is an agent must be the recipient of federal funds in excess of $10,000 for jurisdiction to attach. In *Liscomb,* the defendant sat on the Dallas City Council. He conspired with Floyd Richards, the owner of several Yellow Cab companies in the city to give preferential treatment to Yellow Cab on a number of levels ranging from licensing, expansion and blocking other companies from entering the market. In return, Liscomb received regularly monthly payments, favorable loans and other

benefits. Liscomb was convicted under 666 and argued that the lower Court improperly expanded the reach of the statute as no federal funds were used or affected by his actions. The 5th Circuit held that the jurisdiction of the Bribery statute was based on the "corruption focus" of the statute and it did not matter if there was not a direct impact on federal funds. However, the Court emphasized that the City of Dallas received $54.3 million in federal funds and that the defendant, as a member of the City Council, regularly voted on disbursements of these funds. The 5th Circuit followed an earlier decision from that same circuit, *United States v. Westmoreland, 841 F.2d 572 (5th Cir 1988),* where a County Supervisor had appealed her conviction under 666 and stated:

> Westmoreland argued on appeal that her bribery did not fall under the jurisdiction of Sec. 666, because it did not concern federal funds. We rejected this argument, concluding through statutory interpretation that federal funds need not be traceable to the "tainted transactions" in order for those transactions to be punishable under the statute:
>
> We find the relevant statutory language plain and unambiguous. By the terms of Sec. 666 , when *a local government agency receives an annual benefit of more than_ $ 10,000 under a federal assistance program, its agents are governed by the statute* ...

The *Liscomb* Court then reaffirmed the 5th Circuit holding that a conviction under sec. 666 requires that *the unit of government* of which the defendant is an *agent* be the recipient of the federal funds for jurisdiction to attach. The Court stated:

> In United States v. Phillips, we reversed the conviction under sec. 666 of a parish tax assessor, holding that *he was not an agent of the parish* for purposes of the statute. Thus, the statute's jurisdiction did not extend to his actions.
>
> In *Phillips,* the 5th Circuit held that if the defendant *was not an agent of the unit of government receiving the federal benefits he could not violate sec. 666.*

In United States v. Phillips, 219 F.3d 404 (5th Cir. 2000), the defendant was the tax assessor for St. Helena's parish in Louisiana. Phillips was involved in a number of schemes that deprived the tax assessors office of funds including placing his friends on his payroll when they did not work, accepting kickbacks from the "employed" friends from their pay, using those same individuals to round up people to vote for him for sheriff, etc. These scams cost the assessor's office over $200,000. Phillips was convicted under section 666 but appealed arguing he was not an "agent" of a governmental entity receiving in excess of $10,000 in federal funds in any one 12 month period before or after the transaction. It was established at trial that the federal funds in question were food stamps administered by a separate parish agency from the tax assessor's office. However, the lower court allowed the matter to proceed to the jury instructing the jury that the "tax assessors are parish officers". The government argued that St. Helena Parish is a local governmental body and the tax assessor is a parish agent. The Court said:

> "It is a different matter altogether, however, to suggest that the statute can reach *any government employee who misappropriates purely local funds, without regard to how organizationally removed the employee is from the particular agency that administers the federal program.* Thus, we think that, in the context of the facts of this appeal and in the light of decided cases, the question of whether Phillips was an agent of St. Helena Parish within the meaning of sec.666 turns on whether Phillips, as tax assessor, was authorized to act on behalf of the parish with respect to its funds."

The Court went on to hold:

> "The Louisiana Constitution, as well as statute, establishes assessment districts as independent of parish government and therefore, although Phillips was the tax assessor

for property in the parish, the parish has no power, authority, or control over the assessor's duties or job. See La. Const. art. VI, §§ 5(G) and 7(B), and art. VII, § 24 ("Tax Assessors"). An assessor's duties are set forth by state, not parish, law. See, e.g., La. R.S. §§ 47:1324, 1903, 1956-57, 1993. Phillips was not an officer of the parish as a matter of law."

Thus, as earlier raised and argued by the Defendant, the Defendant must be an "agent" of the specific governmental agency that receives federal funds in order for sec 666 jurisdiction to attach. The government must prove beyond a reasonable doubt that the Michigan House of Representatives, of which the defendant is a member, received $10,000 or more in federal funds *and* that the defendant was *authorized to act on behalf of* the Michigan House of Representatives. Bribery is a specific intent crime as briefed earlier.

### c. False statement to the FBI

Defendant is charged with lying to the FBI under 18 U.S.C. sec. 1001(a)(2) which states:

> **a)** Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--...
>
> **(2)** makes any materially false, fictitious, or fraudulent statement or representation...

To be responsible for a violation under this section, the government must establish that the FBI was within its jurisdiction at the time of the alleged statement.

"[T]he phrase within the jurisdiction merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body. *Id.* at 479 (citation omitted). *See also* United States v. Gibson, 881 F.2d 318, 322 (6th Cir. 1989) (quoting this definition from *Rodgers*). The Sixth Circuit has further

explained that, [W]hen the federal agency has power to exercise its authority, even if the federal agency does not have complete control over the matter, the matter is within the agency's jurisdiction. United States v. Grenier, 513 F.3d 632, 638 (6th Cir. 2008) (*quoting* United States v. Shafer, 199 F.3d 826, 829 (6th Cir. 1999)). *Commentary Pattern Criminal Jury Instructions 13.02.*

The government must prove the following five elements beyond a reasonable doubt:

    (A) First, that the defendant made a statement;

    (B) Second, that the statement was false;

    (C) Third, that the statement was material;

    (D) Fourth, that the defendant acted knowingly and willfully; and

    (E) Fifth, that the statement pertained to a matter within the jurisdiction of the executive branch of the United States government.

The Government, for the first time, disclosed the specific alleged false statements by the defendant in its trial brief. Despite demands by the defendant since May to reveal the content of the claimed fictitious statements all the government would do was point to the various notes taken by the FBI of several discussions had with the defendant and the surreptitious recording of a phone call between Lisa Canada and the defendant (see attached letter, Exhibit A). This has substantially reduced defendant's preparation time to meet these charges. False Statement to the FBI is a specific intent crime.

November 10, 2019

                                                 Respectfully,

                                                 Christopher K. Cooke  (P35034)
                                                 Neumann Law Group

EXHIBIT A



# U.S. Department of Justice

*United States Attorney*
*Western District of Michigan*

---

5th Floor, The Law Building
330 Ionia Avenue, NW
Grand Rapids, Michigan 49503

Mailing Address:
United States Attorney's Office
Post Office Box 208
Grand Rapids, Michigan 49501-0208

Tel. (616) 456-2404
Fax (616) 456-2408

By E-mail

November 5, 2019

Christopher K. Cooke
Neumann Law Group
300 E. Front St., Ste. 445
Traverse City, MI 49684-4733

Re:   *United States of America v. Larry Charles Inman, 1:19-CR-117*

Mr. Cooke:

I am in receipt of your letter dated November 4 and respond to your specific questions as follows:

1. You claim that you have not been provided with the "date, time, place, to whom made or substance of any statement Mr. Inman made to the FBI that supports the third count of the Indictment." This is incorrect. At the arraignment and initial pretrial conference on May 28, 2019, the government produced by hand delivery to you the following summaries of statements Mr. Inman made to the FBI:

   - FBI 302 summary of FBI interview on August 01, 2018 (FBI-000070-74)
   - FBI 302 summary of phone call to FBI on October 16, 2018 (FBI-000093-94)
   - FBI 302 summary of phone call to FBI on October 17, 2018 (FBI-000096)
   - FBI 302 summary of FBI interview on December 07, 2018 (FBI-000097-101)

On July 25, 2019, the government produced by e-mail addressed to you rough notes from those conversations (FBI-000155-167) pursuant to your request.

Additionally, the government produced a copy of the June 19, 2018, audio recording of the consensually-recorded phone call between Lisa Canada and Mr. Inman. That was handed to you at the May 28 arraignment and initial pretrial conference, and was previously provided to you on December 18, 2018, as a courtesy when you requested it.

Finally, on July 9, 2019, the government produced by USAfx/Box cloud server a summary of statements made by Mr. Inman upon the return of his cellular phone (FBI-000068-69).

2. As previously disclosed in the government's initial pretrial summary statement filed with the Court on May 23, 2019, the government is unaware of any prior criminal record of Mr. Inman. Thus, there is nothing to produce. If you have information concerning a prior conviction sustained by Mr. Inman, please advise us of the date, offense of conviction, and the jurisdiction.

3. The government will produce at the November 12 final pretrial conference the FBI 302 summaries of oral statements made by witnesses during their interviews with the FBI. The government does not possess any "signed" or "adopted" statements of its witnesses. Also on November 12, the government will produce a transcript of sworn testimony by FBI Special Agent Jeremy Ashcroft.

        Very truly yours,

        ANDREW BYERLY BIRGE
        United States Attorney

        */s/ Christopher M. O'Connor*
        CHRISTOPHER M. O'CONNOR
        RONALD M. STELLA
        Assistant United States Attorneys