UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                 No. 1:19-CR-117-RJJ

v.                                             Hon. Robert J. Jonker
                                                 Chief U.S. District Judge

LARRY CHARLES INMAN,

        Defendant.
_____/

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE DEFENDANT'S EXPERT TESTIMONY REGARDING DIMINISHED CAPACITY DEFENSE**

**I.   INTRODUCTION**

Defendant, Larry Charles Inman, provided notice of his intent to present a defense of diminished capacity. (PageID.66). Defendant subsequently provided the United States with a supplemental disclosure purporting to set forth the opinions of Dr. Bruce Baker regarding his diminished capacity defense. (Exhibit 1).[1] The United States moves in limine to exclude the opinions of Dr. Baker set forth in the supplemental disclosure for reason that the opinions expressed are not relevant to the diminished capacity defense. Additionally, the United States moves to exclude the opinions because the disclosure fails to set forth the "bases and reasons for the opinions," as required by Fed. R. Crim. P. 16, thereby denying the United States the

---

[1] Defense counsel provided the supplemental disclosure to the United States and indicated that he did not intend to file it with the Court and "expect[ed] that it will not be entered on the public record unless needed in support of a motion or other pleading." The United States has informed defense counsel that it is now necessary to file the supplemental disclosure as an exhibit to this memorandum so that the Court can address the present motion.

1

opportunity to meaningfully review and examine the validity of the opinions with its own experts.

## II.  RELEVANT PROCEDURAL BACKGROUND

### A. Inman Gives Notice of His Intent to Claim Diminished Capacity

The pending indictment charges Inman with attempted extortion, solicitation of a bribe and false statements to the FBI.  On June 18, 2019, Inman filed a "notice of intent to present evidence of defendant's diminished cognitive ability as a result of the use of prescription pain medication." (PageID.66-67).  That notice failed to provide the relevant legal authority for the defense.  On June 21, 2019, the United States wrote defense counsel to clarify that it assumed Inman premised his diminished capacity defense on Fed. R. Crim. P. 12.2(b), and to request that Inman provided necessary medical records regarding his use of prescription pain medication (Exhibit 2).  At the same time, counsel for the United States requested that Inman "[C]omply with Fed. R. Crim. P. 16(b)(1)(C), which requires a written summary of any testimony that the defendant intends to use under Federal rules of Evidence 702, 703, or 705, including the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." (Exhibit 2).  Counsel's letter further indicated that the "government will seek to prohibit the defendant from introducing any such evidence if he fails to comply with his disclosure obligations." (Exhibit 2).

On June 24, 2019, this Court issued an order regarding further briefing, including the issue of diminished capacity.  (PageID.68-71).  The Court noted that Inman's notice of diminished capacity did not specify which rule of criminal procedure he was relying upon, but that "the Court anticipates the defense . . . intends to proceed under Rule 12.2(b)." (PageID.69)  The Court further stated that the diminished capacity defense applies "where the defendant claims only that his mental condition is such that he or she cannot attain the culpable state of

mind required by the definition of the crime." (*Id.*, citing *United States v. Kimes*, 246 F.3d 800, 806 (6th Cir. 2001)). The Court cited binding legal authority indicating that the diminished capacity defense proffered by Inman only applied to specific intent, and not general intent, crimes. (*Id.*) The Court ordered the parties to file additional briefs regarding whether the "three charges in the indictment each constitute specific intent or general intent crimes." (*Id.*)

The United States filed its responsive brief on July 8, 2019, and argued that only the offense set forth in count 3, making false statements to the FBI, constituted a specific intent crime implicating the diminished capacity defense.[2] (PageID.91-124). Inman filed his brief the same day arguing that all three crimes required the United States to prove specific intent and clarifying that "[T]he Defendant intends [his diminished capacity notice] to fall under FRCP 12.2(b)." (PageID.73).

### B. Inman Provides A Supplemental Disclosure Regarding His Diminished Capacity Defense

On August 8, 2019, Inman provided the United States with a supplemental disclosure regarding his diminished capacity defense. (Exhibit 1). The supplemental disclosure consists of five parts: 1) a pleading disclosing expected opinions of Dr. Bruce Baker prepared and signed by defense counsel; 2) the curriculum vitae of Dr. Bruce Baker; 3) the June 13, 2019, Initial Assessment report of Dr. Bruce Baker when evaluating Inman for in-patient care at Hope Network; 4) A "chart note" signed by Dr. Baker dated July 24, 2019; and, 5) Addenda to the Initial Assessment report in the form of a "summary" and "conclusion" dated July 16, 2019. The

---

[2] The United States continues to assert that the only specific intent crime charged in the indictment is making a false statement to the FBI charged in count 3. However, the United States' position in this filing regarding the opinions of Inman's expert would apply to any count that this Court deems requires proof of specific intent.

United States gleans the following information relevant to Inman's diminished capacity defense from the supplemental disclosure:

1) Dr. Baker diagnosed Inman with severe opiate use disorder, provisional mild sedative disorder, and mild alcohol disorder (Ex. 1, Initial Assessment, p.14; Chart Note, p.16);

2) Dr. Baker will opine that "[D]ifficulty arises with causality of his inappropriate request, as he was utilizing opiates, muscle relaxants, sedatives (benzodiazepines), and ingesting alcohol as he has done routinely in the past." (Ex. 1, Summary, p.17);

3) Dr. Baker will opine that the "combination of [Inman's] age (less tolerance to alcohol), medication used, and hoarding of opiates have been detrimental to Mr. Inman's profession as well as his freedom." (Ex. 1, Conclusion, p.18);

4) Dr. Baker is expected to testify that the symptomology of Inman's disorder "affected the defendant's cognitive abilities tremendously, to the point that he would say and do things he would otherwise not do in an unaffected state," including "feelings of grandiosity, memory lapses, illogical thoughts or moods and inappropriate aggressiveness." (Ex. 1, Defense Counsel's disclosure, p.4);

5) Dr. Baker is expected to testify that Inman entered Hope Recovery's treatment program and will testify regarding "the type of treatment, the requirements of the program, the defendant's performance in the program and associated matters." (Ex. 1, Defense Counsel's disclosure, p.5).

After receipt of the last of hundreds of pages of Inman's medical records on October 7, 2019, and preliminary discussions with its own expert witness, the United States believes that Inman's disclosed opinions should be excluded because they either are not relevant to his alleged diminished capacity at the time of the charged offenses or violate Rule 16 because they provide no information regarding the bases and reasons for such opinions.

### III. LEGAL ARGUMENT

**A. The Disclosed Opinions Are Not Relevant Because They Do Not Make a Fact of Consequence – Inman's Alleged Diminished Capacity at the Time of the Charged Offenses – More or Less Probable**

Relevant evidence is any evidence having a tendency to make the existence of any fact that is of consequence to the determination of an action more probable or less probable than in would be without the evidence. Fed. R. Evid. 401; *United States v. Whittington*, 455 F.3d 736,

4

738-39 (6th Cir. 2006).   In order for an expert's opinions to be properly admitted at trial, his opinions must be both relevant and reliable.  *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993); *Khumo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *United States v. Martinez*, 588 F.3d 301, 323 (6th Cir. 2009).  Here, the fact that is of consequence is whether Inman suffered from diminished capacity, such that he could not form the requisite *mens rea*, <u>at the time of the charged offenses</u>.  Because Dr. Baker's opinions do not assist in answering this question, they should be excluded as irrelevant.

      Dr. Baker's opinion that Inman suffers from severe opiate disorder, provisional mild sedative disorder, and mild alcohol disorder, does not assist in determining if he suffered from diminished capacity at the time of the relevant offenses.  There are numerous defendants that come before this Court on a regular basis who are addicted to illegal drugs or prescription medications and who are still convicted of committing federal offenses that require proof of specific intent.  Even assuming that Inman has these disorders that does not mean that he did not possess specific intent at the time of the charged crimes.  The fact Inman was diagnosed as such in June 2019 does nothing to assist the jury in deciding his guilt or innocence for the charged offenses, which occurred in June and August 2018.

      Nor is his treatment for his addiction relevant to the upcoming trial and his alleged diminished capacity.  The fact that Inman has apparently received treatment for drug addiction and how he performed during that treatment simply does not relate back to the time that he sent the relevant text messages or allegedly lied to the FBI.

      Similarly, Dr. Baker's opinion that Inman's addictions have been detrimental to his profession and potentially his freedom do not relate to his diminished capacity.  Everyone would probably agree that addiction to pain medications and other drugs are a detriment, and not an

asset, to one's profession. However, that opinion offers nothing to assist in determining if Inman intended the subject offenses, the only fact of consequence to his diminished capacity defense.

The closest Inman comes to addressing the issue at hand is Dr. Baker's statement that "[D]ifficulty arises with causality of his [Inman's] inappropriate request," purportedly because of his long term use of opiates, muscle relaxants, sedatives, and alcohol. However, even this extremely vague statement does not assist the jury in deciding whether Inman could have formed the requisite criminal intent. And, although defense counsel's disclosure indicates that Inman's disorder affected him tremendously to the point that he would say and do things he otherwise would not do, that statement was not included in Dr. Baker's initial assessment or his addenda to that report and, as explained further below, Inman has disclosed no bases or reasons for that conclusion.

Dr. Baker's opinions have no place in this trial but for Inman's raising a diminished capacity defense. As this Court indicated in its Order, the only relevant question raised by this defense is whether Inman could attain the culpable state of mind required by the definition of the relevant crimes. Because the opinions offered in Inman's supplemental disclosure do not address this one salient issue, they should be excluded.

**B. Inman's Supplemental Disclosure Fails to State Any of the Bases and Reasons for the Opinions Purportedly Supporting his Diminished Capacity Defense**

In order to present the testimony of an expert witness in support of a diminished capacity defense, a "defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial . . . The summary must describe the witness's opinions, <u>the bases and reasons for those opinions</u>, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C) (emphasis added). The Sixth Circuit has recognized that the most

6

important part of this rule is the requirement that the disclosure set forth the bases and reasons for the opinions. *United States v. Davis*, 514 F.3d 596, 612 (6th Cir. 2008). The Advisory Committee Notes to Rule 16 provide that the bases specified should include not only "written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." *Id.* If a party fails to comply with Rule 16, the Court may take several steps, including prohibiting a party from introducing the undisclosed evidence or any other order that is just under the circumstances. *Id.*, citing, Fed. R. Crim. P. 16(d)(2).

In *Davis*, the Government gave defense counsel a chemistry laboratory report, disclosed that if the case went to trial it would offer the testimony of a chemist who would testify consistent with the report, and provided the qualifications of the chemist. *Id.*, at 612. Additionally, the Government "devoted one sentence to the bases for the opinions of the chemists: 'The findings of each chemist are based upon his/her education, training, experience and scientific tests he/she performed on the substances submitted.'" *Id.* The court concluded that the Government's disclosure failed to meet the requirements of Rule 16. *Id.*, at 613. Most importantly, the court noted that had the defendant hired its own expert, "he or she would not have been able to analyze the steps that led the government's chemists to their conclusions." *Id.*, at 613.

Similarly, in *United States v. Jenkins*, 2009 WL 3152189 (6th Cir. 2009), defense counsel moved in limine to exclude the Government's fingerprint expert because the Government's disclosure did not state the bases and reasons for the expert's opinions. The *Jenkins* court concluded that the Government's notice was defective because although the notice identified the names of its experts, their field of expertise, and their qualifications, it did not "provide a summary

7

of their testimony, including a description of their opinions and the reasons therefore." *Id*., at *2. *See also United States v. Brock*, 2007 WL 1041309, *2 (E.D. Tenn. 2007) ("At a minimum, the defendant should be provided with copies of the materials (herein apparently a blood sample lab report, and patient lab reports), the expert used in connection with his proffered opinion, <u>as well as an explanation of how he arrived at his opinion (i.e., his methodology), and the scientific basis underlying and supporting his position (i.e., the reliability component.")</u>  (emphasis added).

Inman's disclosure suffers from the same defects.  Dr. Baker's Initial Assessment report provides nothing except the diagnoses of severe opiate and other disorders and says nothing about whether it is connected in any way to the criminal conduct alleged in the indictment.[3]  The addenda to the Initial Assessment report suggests that "difficulty arises with causality," and that Inman's controlled substances history has been detrimental to his profession, but provides absolutely no information to link these statements to his claim of diminished capacity.  Finally, although Dr. Baker identifies certain medical records or reports that he reviewed in conjunction with evaluating Inman for in-patient residential drug treatment, those documents have not been provided to the United States and Dr. Baker has not explained in any way how those records would allow him to conclude that Inman suffered diminished capacity at the time of the relevant offenses.

Similarly, defense counsel's disclosure that he expects Dr. Baker to say that Inman's history of abusing controlled substances affected his cognitive abilities to the point that he would say and do things he otherwise would not do does set forth a *potentially* relevant opinion.

---

[3]  To some extent, this is to be expected.  The Initial Assessment report is not truly an expert disclosure report under Rule 16, but instead a report designed only to assess Inman's condition and determine his course of treatment.  The report was not designed to determine whether Inman suffered from diminished capacity.  In reality, the Government has never received a document styled a Rule 16 expert disclosure.  However, the Government presumes that defense counsel intended his supplemental disclosure regarding the diminished capacity defense and the attachments described above to constitute a Rule 16 disclosure.

However, neither counsel's disclosure nor the report connect that anticipated testimony to anything in the record of this case. At this point, the potential opinion exists without any specified reasons or bases for its existence. Although defense counsel indicates that "Dr. Baker has also had experience with patients who have suffered from this disorder and who have said and done things while under the effect of these medications that were totally out of character for them and led to bad consequences," no information has been provided about any of those patients or the relevant circumstances, or what in the record of this case would make Inman's experience sufficiently similar to those prior experiences. The existing disclosure is no different than in *Davis* and *Jenkins* where the Government simply provided a report and indicated that its expert would testify based upon his experience and training.

Most importantly, the disclosure fails to state any opinion that Inman had diminished capacity when he sent the text messages in June 2018 or when he allegedly lied to the FBI in August 2018. At most, the disclosure claims Inman's cognitive abilities were affected by his substance disorders but does nothing to tie this assertion to any time period, let alone the time of the alleged offenses. The existing disclosure provides no information about how Dr. Baker could legitimately progress from concluding that Inman has the subject substance disorders to the conclusion that he could not have formed criminal intent -- the only relevant purpose for his opinions in this case.

If the basis for the opinion is peer-reviewed medical literature connecting the long-term use of the subject drugs to the type of cognitive impairment that he claims Inman suffers from, then Inman must provide the Government with those studies. If the potential opinion is based upon facts in Inman's medical record suggesting that Inman suffered from feelings of "grandiosity, memory lapses, illogical thoughts or moods and inappropriate aggressiveness," and that those

feelings prohibited the formation of criminal intent at the time he lied to the FBI or sent the inappropriate texts, then Inman must specify those facts for the Government. However, as the disclosure now stands, Inman has provided no bases and reasons for his expert's expected opinions. As a result, the Government has not been able to effectively prepare to respond to Inman's diminished capacity defense by discussing the methodology and reasoning of Dr. Baker with its own expert. If this Court were to admit Dr. Baker's expected opinions regarding Inman's alleged diminished capacity as currently disclosed, the only support for the opinions would be Dr. Baker's own assertion that it must be so, something clearly prohibited under existing law. *See G.E. v. Joiner*, 522 U.S. 136, 146 (1997) (noting that "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* [an assertion without proof] of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.")[4]

---

[4] Should this Court decide not to exclude Dr. Baker's opinions, the Government may also challenge the opinions by arguing that the opinions are not based upon reliable information under *Daubert*. However, that determination cannot be made until Inman actually provides an appropriate Rule 16 disclosure setting out the bases and reasons for his expert's opinions so that the Government can fairly assess the reliability of the opinions.

## IV. CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court enter an order granting its motion in limine to exclude the opinions of Dr. Baker regarding Inman's diminished capacity defense.

                                                Respectfully submitted,
ANDREW BYERLY BIRGE
United States Attorney

Dated:  October 29, 2019               /s/ Ronald M. Stella
CHRISTOPHER M. O'CONNOR
RONALD M. STELLA
Assistant United States Attorneys
United States Attorney's Office
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404
christopher.oconnor@usdoj.gov
ron.stella@usdoj.gov