UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                                 CASE No. 1:19-CR-117

v.

                                                 HON. ROBERT J. JONKER

LARRY CHARLES INMAN,

      Defendant.

_____/

## **ORDER**

### **INTRODUCTION**

A jury acquitted Defendant Inman on the charge of making a false statement to the FBI and hung on the remaining counts charging Defendant with attempted Hobbs Act extortion and solicitation of a bribe. The Court declared a mistrial on the attempted extortion and solicitation charges and directed the entry of acquittal on the charge of lying to the FBI.

This Court held a status conference under Rule 16.1 on January 16, 2020 to determine whether the government intended to retry the charges on which the jury was unable to reach unanimous agreement, and to address retrial planning issues. The government indicated it planned to retry the two charges. Thereafter both sides requested an opportunity to brief several issues that the Court raised in an earlier Order or which were discussed and expanded upon during argument at the hearing. This Order sets a briefing schedule. It also provides additional focus for the parties on some of the Court's concerns.

## DISCUSSION

1. **Jeopardy**

One preliminary question the Court discussed with the parties is the effect of the jury's decision to acquit Defendant on Count 3 on the remaining charges. Generally there is no double jeopardy problem when a jury is unable to reach unanimous agreement on a charge and the government later seeks to retry that charge. *See Richardson v. United States*, 468 U.S. 317, 325 (1984) (holding that "the failure of the jury to reach a verdict is not an event which terminates jeopardy."). But in mixed verdict cases, there are difficult questions about the scope of the acquittal and what, in particular, may be precluded as a factual matter during retrial. *See Yeager v. United States*, 557 U.S. 110 (2009) (noting that in some cases acquittals can preclude retrial on counts on which the jury hangs). The Court noted authority that expanded on these questions. *United States v. Bailin*, 977 F.2d 270 (7th Cir. 1992); Lissa Griffin, *Untangling Double Jeopardy in Mixed-Verdict Cases*, 63 SMU L. Rev. 1033 (2010); Janet E. Findlater, *Retrial After A Hung Jury: The Double Jeopardy Problem*, 129 U. Pa. L. Rev. 701 (1981).

The parties provided some initial comments, but both sides will need an opportunity to brief the issues.

2. **Decision to Retry**

Assuming the government is not precluded from retrial, the question remains whether the government is entitled to retrial or whether any zone of judicial discretion remains. In the article cited above, Professor Findlater goes so far as to suggest that double jeopardy actually does and should bar retrial on counts where the jury hung. Courts do not appear to have adopted that view, *see, e.g., Richardson*, 468 U.S. at 325, but it is one thing to conclude retrial is available. It is something more and different to say retrial is a government right and a court has no equitable

2

discretion to close the door after one full and fair opportunity. After admittedly non-exhaustive research, the Court has found no cases addressing this issue.[1]

During the hearing, the government suggested it did not receive a fair trial in the first instance. As the Court stated at the hearing, and emphasizes here, the Court is entirely satisfied on the present record that both sides received a fair trial. However, if either side believes that further development on this issue is necessary as part of their argument for whether a retrial is required, they should provide a suggested protocol for proceeding further.

### 3. Constitutional Issues

The Court has expressed concerns regarding several overlapping constitutional issues involving protected political fundraising activity, potential First Amendment overbreadth, and Due Process vagueness. The line between seeking legitimate campaign contributions and potential felonious activity is not as bright and clear as a "quid pro quo" test might imply, especially after considering the possible preclusive scope of the partial acquittal. What if deadlock is the most likely result in any retrial of the hung counts because no collection of rational jurors is likely to reach unanimous agreement on the nebulous question of when a particular discussion about or solicitation of campaign contributions crosses the line from "politics" to "felony?"

The fact pattern in this case is uniquely open to this risk because nothing other than discussion or solicitation of otherwise lawful campaign contributions is at issue.[2] This is different

---

[1] Following the hearing, the Court found *United States v. Wright*, 913 F.3d 364 (3d Cir. 2019), in which a divided panel reversed a district court's dismissal of the Indictment following a second hung jury. All three judges appear to recognize some inherent judicial power to preclude retrial. The panel divided only on the question of whether the district judge misused it in the particular case.

[2] The $30,000 referenced during the first trial represented the total amount that three PACs would lawfully be able to "max out" at $10,000 per PAC. The $30,000 figure first arose, according to evidence in the first trial, in March of 2018, well before the critical vote. The evidence for this was a written e-mail report from the lobbyist of the Michigan Regional Council of Carpenters and

from any other fact pattern in any cases of which the Court is aware. All other reported cases cited to the Court involve something more than lawful contributions. *Cf. McCormick v. United States*, 500 U.S. 257 (1991) (state legislator failed to report four cash payments); *Evans v. United States*, 504 U.S. 255 (1992) (public official received $1,000 campaign check and $7,000 cash, failing to report cash); *United States v. Peete*, 919 F.2d 1168 (6th Cir. 1990) ($1,000 in cash under the table); *United States v. Van Pelt*, 448 F. App'x 301 (3d Cir. 2011) ($10,000 in cash passed at Atlantic City restaurant).

This consideration warrants caution. In the other reported cases the fact finder could always look to some other conduct beyond the campaign contribution itself to give context and meaning to the charged conduct and decide whether there was a quid pro quo or not. This case, in contrast, involves only the discussion or solicitation of an otherwise lawful contribution. Furthermore, the contributions in this case were ultimately not even made. Can these considerations satisfy the general vagueness and overbreadth tests in the sensitive First Amendment context of protected political speech?

The legal principles at issue include First Amendment protected conduct, overbreadth, and vagueness. "For an as-applied challenge, a plaintiff attacks the validity of the law as it has been applied to him or her by focusing on the acts that are the subject of the litigation." *Country Mill Farms, LLC v. City of E. Lansing*, 280 F. Supp. 3d 1029, 1042 (W.D. Mich. 2017) (citing *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 482-83 (1989). The First Amendment overbreadth doctrine, in turn, balances the "'harmful effects' of 'invalidating a law that in some of its applications is perfectly constitutional' against the possibility that 'the threat of enforcement

---

Millwrights to Lisa Canada at the union. No one reported the issue to law enforcement at the time. It was not until the later text message shortly before the vote in June of 2018 that law enforcement was called.

4

of an overbroad law [will] dete[r] people from engaging in constitutionally protected speech." *United States v. Stevens*, 559 U.S. 460, 484-85 (2010) (Alito, J., dissenting). A party seeking to invalidate a statute as overly broad "must show substantial overbreadth: that the statute prohibits "'a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]'" *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (quoting *Carey v. Wolnitzek*, 614 F.3d 189, 208 (6th Cir. 2010). A statute can also "be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).[3]

Consider the other legislators who had to vote on the prevailing wage initiative. The evidence at the first trial was overwhelming that the vote was a key target for each side. Testimony established that everyone voting on this legislation knew that the flow of campaign dollars—the "lettuce to feed the rabbits" in the metaphorical language of one long-time politico—would be directly affected by their decision on how to vote. Trial testimony further demonstrated that lobbyists quite literally keep score on the legislature. They choose certain votes to put into their score on how good the legislator is for the group's interests. And obviously dollars will follow the score. Is this conduct open to quid pro quo scrutiny? What about those legislators who received maximum contributions from unions or other interest groups on either side following the vote?[4]

---

[3] Throughout this case, the Court and the parties have at least touched on these types of arguments, though not always under these doctrinal headings. For example, Defendant's contentions relating to jurisdictional elements of the offenses could be considered First Amendment as applied arguments. *United States v. Van Pelt*, 448 F. App'x 301 (3d Cir. 2011) (evaluating similar arguments from state official under as applied framework).

[4] The Court notes that the Michigan Regional Council of Carpenters and Millwrights is hardly the only institution to keep "score" on Michigan legislators. Indeed, the practice appears to be

5

Could the government bring charges and ask a jury to assess whether those votes were a quid pro quo, at least if there was any evidence of a prior communication between the legislator and a lobbyist?

If these kinds of activities are potentially open to scrutiny, then the reach of the government theory appears potentially overbroad, chilling perfectly legitimate and necessary speech. Though evaluating a different statute, the Supreme Court, in a recent oral argument, was confronted with similar concerns in the context of politics. *See* Transcript of Oral Argument, *Kelly v. United States*, No. 18-1059 (Jan. 14, 2010), at pp. 40-41 (Justice Breyer testing the implications of the government's theory of what conduct would qualify as a 30-year felony); and at pp. 66 (Petitioner's counsel addressing the potential "chilling effect" of the government's theory), *available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2019/18-1059_6jfm.pdf*.[5]
On the other hand, if tying contributions to scorecards is beyond scrutiny, then overbreadth may not be implicated, but vagueness perhaps would be. In such a situation, the line between federally

---

commonplace across the political spectrum. *See, e.g., Legislative Scorecards*, SIERRA CLUB MICHIGAN CHAPTER, https://www.sierraclub.org/michigan/legislative-scorecards (last visited Jan. 21, 2020); *Legislative Voting Records*, MICHIGAN CHAMBER OF COMMERCE, https://www.michamber.com/votingrecord (last visited Jan. 21, 2020); *Michigan 2017 Legislative Scorecard*, AMERICANS FOR PROSPERITY, https://americansforprosperity.org/michigan-scorecard-2017/ (last visited Jan. 21, 2020); *The 2018 Michigan AFL-CIO Legislative Scorecard*, MICHIGAN AFL CIO, http://miaflcio.org/2018-michigan-afl-cio-legislative-scorecard/ (last visited Jan. 21, 2020).

[5] Just yesterday, the United States Court of Appeals for the Second Circuit struggled with the reach of the government's quid pro quo Hobbs Act theory against a former member of the New York State Legislature and invalidated several (though not all) of the convictions. *Untied States v. Silver*, ___ F.3d ___, Case No. 18-2380 (Jan. 21, 2020). The specific issues were different than those in this case, but the court recognized the need for clear legal rules that avoided the risk of unconstitutionally criminalizing "*any* effort to buy favor or generalized goodwill from an official[.]" *Id.*, slip op. at 25-26 (quoting *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 405-06 (1999) (emphasis added by Second Circuit). The *Silver* case invalidated several of the convictions even though the alleged quid pro quo in the case involved legal referral fees totaling $3.5 million, not otherwise lawful campaign contributions capped at $10,000 per donor.

felonious conduct and legal First Amendment campaign fundraising would be potentially too vague, at least with respect to a case that involves nothing more than talk about campaign contributions[6] and a flow (or potential flow) of otherwise legitimate campaign contributions. The Supreme Court, most recently in the context of the ACCA, has not hesitated to find statutory language void for vagueness when it fails to give fair warning to potential criminal actors or adequate standards to avoid arbitrary and selective enforcement. *See, e.g., Johnson v. United States*, 135 S. Ct. 2551 (2015).

The Court would appreciate the parties' positions on these issues.

**4. Issues for Retrial**

Assuming this matter proceeds to a retrial, the Court discerns a number of issues relating to the scope and timing of the second trial. A practical and preliminary issue is with respect to scheduling a retrial. A delay in this action will allow time to brief the many issues raised in this order, as well as time to bring this case to trial during the summer, when the State Legislature is out of session and witnesses intricately involved in the legislative process may have more flexibility in their schedule. Both the defense and the government recognized these values and agreed that any retrial should not be before this summer. Accordingly, the Court finds the ends of justice warrant scheduling any retrial no earlier than the Michigan legislative summer recess, following the Court's resolution of the issues to be briefed.

During the scheduling hearing, the Court further discussed several evidentiary issues that may arise during a retrial. One issue relates to the extent the defense may put on proofs regarding

---

[6] Added to this is the mixed verdict the jury reached during the first trial. To the extent the cases and commentary cited above support a robust zone of preclusion for acquittal in any retrial, the conduct that might be subject to retrial may not even amount to a "solicitation," but just an inquiry or discussion about campaign contributions.

7

Defendant's alcohol and opioid addiction, use and abuse. Now that Count 3 is out of the case, the government contends that no such proofs are appropriate. The defense asserts that nothing significant has changed on this particular issue and that the same proofs would be proper. The parties may amplify their briefing on these issues.

The defense also stated its potential desire to make another run at offering expert testimony on the issue. If so, the defense must provide Rule 12.2(b) notice within the time deadline set by this Order. The defense will also have to demonstrate qualification of the expert and any potential testimony under *Daubert* principles. The defense requested 30 days in which to decide on the expert issue. The Court will require expert disclosures no later than 45 days from the date of hearing and before the parties' opening briefs are due.

An additional evidentiary issue arose with respect to Defendant Inman's testimony. Defendant elected to waive his Fifth Amendment rights during the first trial and testify under oath. The parties should evaluate whether the government may use that testimony either during its case in chief, or at any other point, during a possible retrial even if Defendant Inman elects not to testify during the retrial.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED:**

1. No later than **Monday, March 2, 2020** the defense shall disclose to the government, along with any required accompanying materials, any expert it expects to call during a retrial on this matter.

2. The parties shall submit supplemental briefing on the issues discussed at the hearing, this Order, and any other issues they may wish to brief. Opening briefs are due no later than **Tuesday, March 17, 2020.** Responsive briefs are due no later than **Thursday, April 16, 2020.**

Dated:     January 22, 2020                       /s/ Robert J. Jonker
                                                                               ROBERT J. JONKER
                                                                               CHIEF UNITED STATES DISTRICT JUDGE