UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

      CASE No. 1:19-CR-117

      HON. ROBERT J. JONKER

LARRY CHARLES INMAN,

      Defendant.

_____/

## OPINION AND ORDER

The government alleges that Defendant Larry Inman attempted to sell his vote as an elected representative in the Michigan House of Representatives on the repeal of Michigan's prevailing wage law in exchange for a maximum contribution to his campaign account. Defendant was charged in an Indictment with attempted Hobbs Act extortion; solicitation of a bribe; and making a false statement to the FBI. A jury acquitted Defendant on the charge of making a false statement to the FBI but could not reach a unanimous verdict on the other charges. Following remand from the Sixth Circuit Court of Appeals, the matter is moving toward retrial on the mistried counts.

Both sides have filed motions in advance of the final pretrial conference. The defense, proceeding with new counsel, renews its motion to dismiss the Indictment. (ECF No. 177). If the case is to move forward, however, the defense has also renewed its Notice of Intent to Introduce Evidence of Diminished Capacity. (ECF No. 180). The defense says the two remaining counts are specific intent crimes, and accordingly it seeks to present evidence along

with lay and expert testimony that Defendant Inman was abusing alcohol and opiates such that he could not form the intent necessary to engage in the two crimes.

The government opposes the defense motion to dismiss. It has also filed three motions in limine, two of which touch on Defendant's diminished capacity defense. First, the government seeks to preclude references to the earlier verdict during the retrial. Second, the government seeks to exclude Defendant's proposed expert testimony from Dr. Richard Frederick. (ECF No. 188). Third, and more broadly, the government seeks to exclude all evidence relating to Defendant's medical history, drug use, and the effects of those drugs. Such evidence is irrelevant, the government says, because the two remaining counts are general intent, not specific intent, crimes. And beyond that the government says the evidence is unfairly prejudicial and likely to confuse the jury.

For the reasons set out below, the Court denies the defense motion to dismiss and dismisses as moot the government's motion regarding references to the earlier trial. As for the two motions regarding medical evidence, the Court grants the government's motion to exclude Dr. Frederick's testimony. The Court further grants, in part, the government's motion to exclude evidence of Defendant's medical history. Both sides will be allowed to present evidence and elicit testimony regarding a witness's own observations (or Defendant's own descriptions should he choose to testify) of Defendant's behavior and drug use at the time of the events in question only; testimony regarding substance abuse diagnoses and treatment in periods following the events at issue is either irrelevant, or excludable under Rule 403.

## BACKGROUND

Defendant Larry Inman served three terms as an elected member of the Michigan House of Representatives between 2015 and 2021. In June 2018, the Michigan Legislature considered a

measure on repealing Michigan's Public Act 166 of 1965, commonly known as the "prevailing wage law." Supporters of repeal claimed it would save taxpayer dollars. Those in opposition, which included several organized labor groups, argued repeal would result in a shortage of skilled labor.

According to the government, shortly before the Michigan House of Representatives was due to vote on the repeal measure, Defendant Inman reached out via a series of text messages to the Michigan Regional Council of Carpenters and Millwrights ("MRCCM"), a labor union opposed to repeal and whose political action committee had previously contributed to Defendant's campaign committee. In the text messages, Defendant Inman expressed a willingness to consider a vote against the prevailing wage repeal, but he told the MRCCM that he and other like-minded representatives "need[ed] some more help." According to the government, the MRCCM understood the "help" Defendant Inman asked for was a maximum contribution to his campaign account. But when the "help" failed to materialize, Defendant Inman defaulted to the predominant position of his caucus, and he voted in favor of repealing the prevailing wage law. The repeal vote subsequently passed by a narrow margin and the prevailing wage law was repealed.[1]

A grand jury charged Defendant Inman with attempted Hobbs Act extortion, solicitation of a bribe and making a false statement to the FBI. (ECF No. 1). The government alleges the text messages and their temporal proximity to the series of events demonstrated the requisite "quid pro quo" to move things from ordinary legislative sausage making to a criminal act.

---

[1] The repeal turned out to be short lived. The Michigan legislature has since reinstated the prevailing wage. Kelly Vaughen, *Michigan to Reinstate Prevailing Wage After Right-To-Work Repeal*, CBS News (Marh. 27, 2023, 10:54 PM), https://www.cbsnews.com/detroit/news/michigan-to-reinstate-prevailing-wage-right-to-work-repeal/.

Before trial, the defense sought to dismiss the Indictment. (ECF No. 13). The motion was extensively briefed and in addition to claiming the government would be unable to prove the case, Defendant pointed to First Amendment and federalism principles as a basis for dismissal. The Court denied the motion in an Order dated October 15, 2019. (ECF No. 53).

The matter proceeded to a jury trial during which the defense presented testimony and other evidence regarding Defendant Inman's medical conditions as well as his ingestion of medication and alcohol. After a six-day trial the jury returned a unanimous verdict of "not guilty" with respect to Count 3. The jury was unable to come to a unanimous decision on the other two counts. (ECF No. 97). The Court declared a mistrial on those two counts. Thereafter the Court granted a defense Rule 29 motion and dismissed Counts 1 and 2. (ECF No. 126). The government appealed, and on July 7, 2022, the Sixth Circuit Court of Appeals reversed the Court's decision. The matter is now proceeding to a retrial on Counts 1 and 2.

In advance of the scheduled final pretrial conference in this matter, the defense has filed a renewed motion to dismiss the Indictment. (ECF No. 177). The government opposes the defense motion, and it has filed three motions seeking, first of all, to preclude evidence and argument at retrial relating to the earlier trial (ECF No. 175); second to exclude Defendant's proposed expert testimony regarding his claimed diminished capacity (ECF No. 188); and third to exclude evidence of Defendant's medical history and drug use (ECF No. 173). The government has an expert of its own, which it claims will not be necessary if the latter two motions are granted.

**LEGAL ANALYSIS AND DISCUSSION**

1. ***Defense Motion to Dismiss***

The defense brings the motion to dismiss under FED. R. CRIM. P. 12(b)(3). On a motion to dismiss an Indictment, the Court must view the Indictment's factual allegations as true and must determine only whether the Indictment is "valid on its face." *Costello v. United States,* 350 U.S. 359, 363 (1956). "If an indictment is valid on its face, it may not be dismissed on the ground that it is based on inadequate or insufficient evidence." *United States v. Walters*, No. 3:15-CR-14-GFVT-REW, 2016 WL 1453069, at *3 (E.D. Ky. Apr. 12, 2016) (citing FED. R. CRIM. P. 12(b)(2) n.2; *United States v. Knox*, 396 U.S. 77, 83 n.7 (1969)); *see also United States v. Marra*, 481 F.2d 1196, 1199-1200 (6th Cir. 1973) (approving the district court's comment that "[a] motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

"Generally, motions are capable of determination before trial if they raise questions of law rather than fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). "[W]here the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in an indictment, the Court is reviewing a question of law, not fact." *United States v. Vertz*, 40 F. App'x 69, 70 (6th Cir. 2002) (citing *United States v. Bowman*, 173 F.3d 595 (6th Cir. 1999)). A reviewing court is permitted to "make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact." *United States v. Levin*, 973 F.2d 463, 467 (6th Cir. 1992).

The Indictment here is facially valid. It contains the "plain, concise and definite written statement of the essential facts constituting the offense[s] charge." FED. R. CRIM. P. 7(c)(1). The Indictment further clearly sets out what the government believes the sought-after agreement was. Count 1, charging Defendant with attempted Hobbs Act extortion, alleges "[s]pecifically, the

5

Defendant unlawfully solicited from the MRCCM a political campaign contribution of money in exchange for the official act of voting "No" on the 2018 legislative initiative petition to repeal Michigan's prevailing wage law in the Michigan House of Representatives." (ECF No. 1, PageID.5). Likewise Count 2 charging solicitation of a bribe, alleges that Defendant "did corruptly solicit and demand a thing of value, namely, a political campaign contribution of money from the MRCCM, intending to be influenced and rewarded in connection with a business transaction of the State of Michigan involving a thing of value of $5,000 or more, namely, his vote in the Michigan House of Representatives on the 2018 legislative initiative petition to repeal Michigan's prevailing wage law." (ECF No. 1, PageID.6). This is enough to move forward on the trial.

      The defense mainly argues that in a case such as this, where the allegedly corrupt quid pro quo concerns campaign contributions, *United States v. McCormick*, 500 U.S. 257 (1991) "requires *something more* than proof by implication." (Def.'s Br. 16, ECF No. 117, PageID.3232) (emphasis in original). And here, the defense says, the Indictment does not allege that any promises or agreements were made to union representatives or lobbyists. The text messages at issue, the defense contends, cannot support an explicit quid pro quo. *See* Def.'s Br. 24, ECF No. 177, PageID.3240 ("The only possible *quid* here is to 'do my best to hold.' The only possible *quo* is an unspecified number between $5000 and $30,000. The lack of a clear *quid* or *quo* should end the inquiry as a matter of law."). But the Sixth Circuit made clear that no "plus factor is required" with respect to "quid-pro-quo arrangements." *United States v. Inman*, 39 F.4th 357, 367 (6th Cir. 2022). "The key question when looking at a violation of 18 U.S.C. §§ 1951 and 666(a)(1)(B) is whether there was an agreement between the official and the donor." *Id.* at 368. In other words, the government must present evidence of the alleged quid pro quo to

6

demonstrate that Defendant Inman "extorted or attempted to solicit an agreement with MRCCM where Inman would vote in MRCCM's favor on the prevailing-wage law in exchange for payment." *Id.* at 368. And this quid pro quo does not need to be set out "in express terms, for otherwise the law's effect could be frustrated by winks and nods." *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring). The Court is satisfied the government has laid out enough to survive the Rule 12 motion.

The remaining defense arguments are better presented in a Rule 29 motion. The defense, with the assistance of the first trial record, contends that the government will not be able to produce enough evidence of a criminal quid pro quo to distinguish in a legally sufficient way between unseemly but constitutionally protected campaign activities, on the one hand; and criminal behavior of attempted extortion and solicitation of a bribe, on the other hand. There may be some force to this argument, but now is not the proper time to consider it. While noting that there is no "plus factor" to quid pro quo arrangements, the Sixth Circuit has also said that "there must be *something* that moves permissible campaign actions over the line to criminal extortion and solicitation." *Inman*, 39 F.4th at 368. And in the Rule 29 context, "[e]vidence that at most establishes no more than a choice of reasonable possibilities cannot be said to be sufficiently substantial to support a criminal conviction upon appeal.'" *United States v. Morrison*, 220 F. App'x 389, 392 (6th Cir. Feb. 22, 2007) (quoting *United States v. Saunders*, 325 F.2d 840, 843 (6th Cir. 1964)). The defense will have to await proofs and an opportunity to move under Rule 29.

Therefore, the Court denies the defense motion to dismiss.

7

### 2. *Government's Motion in Limine Regarding Result of First Trial*

The government next moves for an Order excluding evidence and argument that a prior jury acquitted Defendant Inman of lying to the FBI and hung on the remaining counts. The defense does not disagree as a general matter but believes there may be instances where the government opens the door to references to the first trial. For example, it may be necessary or appropriate to impeach a trial witness with a prior inconsistent statement. In the Court's experience, any such matter can easily be handled with a reference to "earlier proceedings" or even "earlier trial" without needing to disclose the outcome. The Court will handle all other issues on a case-by-case basis. Accordingly, this motion is dismissed as moot.

### 3. *Government's Motion to Exclude Defendant's Expert Testimony on Diminished Capacity (ECF No. 188).*

The Government moves to exclude the opinion testimony of Dr. Frederick. The government says exclusion is warranted for three reasons: (1) the doctor will opine on an ultimate issue, namely, whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged; (2) the opinion would violate the Insanity Defense Reform Act of 1984 (IDRA); and (3) the opinion is not relevant or helpful to the jury.

Federal Rules of Evidence 701 through 706 control the subject of expert evidence and testimony. Generally, the admission of expert evidence is limited to instances in which the "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Thus, while expert testimony may embrace an ultimate issue under Rule 704(a), it must do so by factual conclusions supporting findings as to the ultimate issues as opposed to bland conclusions on the ultimate issues themselves. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994).

8

An examination of Dr. Frederick's report shows that it is directed to providing a narrow legal conclusion on an ultimate issue of fact—whether Defendant Inman, with a diminished capacity due to drug and alcohol use, could have meant to propose the alleged quid pro quo in this case. Generally, such testimony should be excluded. *See United States v. Dennison*, 937 F.2d 559, 565 (10th Cir. 1991) (doctor's opinion that alcohol and drug consumption combined with borderline personality disorder renders individual incapable of forming specific intent "is the type of opinion or inference testimony Rule 704(b) is intended to exclude."). There is no question that Dr. Frederick is qualified, but the doctor's opinions are not based upon contemporaneous testing, or technical or specialized knowledge that would assist the jury. Rather, it is based upon the basic testimony from the earlier trial. In this, Dr. Frederick's testimony either is not relevant—because it simply encapsulates information given to the jury—or opines as a thirteenth juror on an ultimate issue, which is not permissible.

The defense says there is more to the doctor's opinion than that, and points to the lists on page 29 of the report, which details "expectable effects of excess alcohol, opiates, and the mixture of the two drugs' as well as the "elements of executive function, which are quite vulnerable to the effects of intoxication[.]" (ECF No. 1986, PageID.3338). Yet on the following page, the doctor states "the general public is aware of the potential harm caused by being intoxicated during important times of working, operating machinery, and important interactions." (*Id.* at PageID.3339). Thus, the Court sees nothing in Dr. Frederick's report that would help the trier of fact understand the evidence or to determine a fact at issue. The doctor himself recognizes that lay people readily understand the issues. At bottom, expert testimony that reaches a legal conclusion (and therefore "does little more than tell the jury what result to reach")

has no legitimate purpose and should be excluded. *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

Accordingly, the Court grants the government's motion to exclude Dr. Frederick's testimony.

### 4. *Government's Motion to Exclude Evidence of Defendant's Medical History (ECF No. 173)*

More broadly, the government moves to exclude all evidence and argument pertaining to Defendant Inman's medical history, drug use, the effect of those drugs, and post-Indictment changes to his drug use under Rules 401, 402, and 403. Testimony and evidence on these topics were presented during the first trial, when Defendant Inman faced a charge of lying to the FBI. Unlike the count on which Defendant was acquitted, the government says the remaining two corruption counts are general intent crimes. Accordingly, the government contends these topics are now irrelevant, unfairly prejudicial, likely to result in jury confusion, and will only serve to appeal to juror sympathies.

### A. *Specific vs. General Intent*

The starting point for both sides is whether the remaining two counts are specific or general intent crimes. General intent crimes do not ordinarily call for evidence on intoxication or other diminished capacity issues. *See, e.g.*, *United States v. Bennett*, 975 F.2d 305, 308 (6th Cir. 1992) (finding no error in failing to provide intoxication instruction in felon in possession of a firearm case and noting "the defendant cites no authority for the proposition that the degree of intoxication somehow negates intent for a general intent crime."). The Government contends Counts 1 and 2 are general intent crimes because neither attempted extortion, nor solicitation of a bribe, requires the government to prove that Defendant acted willfully, that is, with the purpose of violating a known legal duty.

During the first trial, the defendant cited this Court to *United States v. Dabish*, 708 F.2d 240 (6th Cir. 1983), in which the circuit stated that a Hobbs Act violation "is a 'specific intent' crime; intent is an essential element of the offense[.]" *Id.* at 240; *see also United States v. Cobb*, 397 F. App'x 128, 137 (6th Cir. 2010) (Hobbs Act violations are specific intent crimes). In the present round of briefing, the government argues, however, that the Sixth Circuit pattern instructions do not follow *Dabish* because the case is inconsistent with Supreme Court precedent. The committee commentary for Pattern Instruction 17.02 notes, for example, that the elements are based on the language of the statute, and the Supreme Court's decision in *Evans*, 504 U.S. 255 (1992). And in Pattern Instruction 17.01 (the instruction for Hobbs Act extortion by Force, Violence, or Fear), the committee stated the *mens rea* for the offense is "knowingly," and referenced the decision in *Evans* for the proposition that there is a "mens rea of knowingly for extortion under color of official right."

Yet Defendant Inman has been charged in Count 1 with attempt and not with the completed offense. And "[t]he general rule . . . is that attempt crimes require proof of a specific intent to complete the acts constituting the substantive offense." *United States v. Calloway*, 116 F.3d 1129, 1136 (6th Cir. 1997) (citing Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.2(c) (1986)). "The intent to finish the crime, coupled with affirmative acts toward that end, is a *sine qua non* of a punishable attempt." *Id.* The government sees daylight, however, between these general principles of attempt crimes and the evidence regarding drug and alcohol use in this case. Attempted Hobbs Act extortion and solicitation of a bribe, the government says, do not require proof that the defendant knew the activities were unlawful. Rather it is enough that the defendant consciously intended to complete the act of transmitting

11

the messages. For this reason, the government says that Counts 1 and 2 are general intent crimes.

The Court disagrees with the government on this. The nature of the crimes charged here requires a corrupt agreement to trade a vote for an official act. In other words, Counts 1 and 2 require more than that Defendant Inman knowingly sent a text message seeking a campaign contribution related in some general way to an upcoming vote. *C.f. United States v. Gonyea*, 140 F.3d 649, 653 (6th Cir. 1998) (distinguishing between general and specific intent crimes). As the government put it during oral argument, it is the proximity and clarity of the communications sent in this case that moves the matter beyond ordinary campaign activities and into criminal quid pro quo. To the Court, this means that there not only must be knowing communication about a campaign contribution and a key vote, but also the capacity to understand that the communication was soliciting a corrupt quid pro quo agreement. Attempt requires more than knowingly sending a text message. The key issue is whether the defendant thought he was doing so in support of a proposed corrupt bargain. Accordingly, the Court sees the crimes charged here as more than simple general intent crimes.

B. Relevancy

Generally, "evidence of diminished capacity may be used to negate the *mens rea* of specific intent crimes only." *U.S. v. Gonyea*, 140 F.3d at 653.[2] "Because the Government must prove every element of a crime beyond a reasonable doubt, a defendant's right to present a defense 'generally includes the right to the admission of competent, reliable, exculpatory

---

[2] The Sixth Circuit has also stated that diminished capacity evidence may be used to negate a general intent element. *See United States v. Lilley*, No. 15-6415, 2017 WL 7048806, at *4 (6th Cir. July 26, 2017) (citing *United States v. Odeh*, 815 F.3d 968, 978–79 (6th Cir. 2016)). The government position is that later Supreme Court decisions have undercut these statements. Because the Court sees the crimes charged here as more than standard general intent crimes, the Court need not resolve the issue.

evidence' to negate an element of the offense." *Odeh*, 815 F.3d at 977 (quoting *United States v. Pohlot*, 827 F.2d 889, 900-01 (3d Cir. 1987) (internal citation in *Odeh* omitted). Here, to prove the Defendant guilty on Count 1, the government must prove that Defendant intended to commit Hobbs Act extortion. Hobbs Act extortion, in turn, requires that that the defendant *knew* that property—namely, campaign contributions—would be obtained or received in exchange for his official act. Likewise, Count 2 of the Indictment requires that Defendant solicited something of value, and did so corruptly with the intent to be influenced by the transaction. Here, evidence of Defendant Inman's consumption of alcohol and medication is potentially relevant and admissible if it serves to negate the *mens rea* of either Counts 1 and 2. At least some of the evidence Defendant Inman seeks to introduce meets this relevancy threshold.

The government next maintains that even if evidence regarding Defendant Inman's drug and alcohol use is theoretically relevant, Rule 403 balancing augurs towards excluding it in this case. The Court agrees that not all the evidence Defendant seeks to introduce would be relevant to negating an element of either Counts 1 or 2; or would fail the 403 balance, in any event. In particular, evidence relating to Defendant's condition, diagnoses, and treatment after the prevailing wage vote and after the Indictment would not meet the test of relevancy generally. Moreover, any limited probative value such evidence would arguably have is substantially outweighed by the danger of confusing the issues and misleading the jury. On the other hand, the observations of people who saw and interacted with Defendant Inman during the leadup to the prevailing wage vote—when the text messages central to this case were sent—and Defendant's own accounts of his behavior at the time (if he chooses to testify) are admissible in the Court's view. The precise line and balance will have to await presentation of the proofs at trial.

C.  Government's Expert

During oral argument, the government stated that if some evidence of Defendant's medical condition is permitted it would introduce testimony from its expert, Dr. Jouney in its case in chief.  The defense has also identified Dr. Pozios as an expert to rebut Dr. Jouney's opinions.  The Court is inclined to believe that much of both Dr. Jouney and Dr. Pozios' opinions suffer from the same flaws as Dr. Frederick's.  Much of Dr. Pozios' opinion, for example, reads more like argument than medical opinion.  After the Court's decision excluding Dr. Frederick, the government may not plan to offer any testimony from Dr. Jouney in the case-in-chief.  If so, this issue is moot.  If the government still intends to offer this evidence, the court will address it at the Final Pretrial Conference to be scheduled by separate order.

## CONCLUSION

**ACCORDINGLY, IT IS ORDERED** that the Government's Motion in Limine to Exclude Evidence of Defendant's Medical History and Drug Use (ECF No. 173) is **GRANTED in part** and **DENIED in part.**  The Court will discuss the matter in greater detail with the parties at the final pretrial conference.

**IT IS FURTHER ORDERED** that the Government's Motion in Limine to Exclude Evidence of Prior Jury Verdict and Deadlock (ECF No. 175) is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that the Defendant's Motion to Dismiss Indictment (ECF No. 177) is **DENIED.**

**IT IS FURTHER ORDERED** that the Government's Motion to Exclude Defendant's Proposed Expert Testimony (ECF No. 188) is **GRANTED.**

Dated:  September 21, 2023         /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   UNITED STATES DISTRICT JUDGE